**John F. LEBUS, Regional Director of the 15th Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD**

v.

**MANNING, MAXWELL AND MOORE, INCORPORATED.**

Civ. A. No. 9510.

United States District Court
W. D. Louisiana,
Alexandria Division.

June 28, 1963.

Stuart Rothman, General Counsel National Labor Relations Board, Washington, D. C., Charles Paschal and Richard B. Hutchinson, Regional Counsel, New Orleans, La., for plaintiff.

Monroe & Lemann, New Orleans, La., for defendant.

HUNTER, District Judge.

This proceeding is on a petition filed by the Regional Director of the 15th Region of the National Labor Relations Board (hereinafter called the Board), pursuant to Section 10(j) of the National Labor Relations Act (29 U.S.C.A. § 160 (j)). The Board seeks a temporary injunction pending the final disposition of the matters herein pending on a charge filed by International Union of Operating Engineers, AFL–CIO, alleging that Manning, Maxwell and Moore, Inc. (hereinafter called Respondent) has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a) (1) and (5) of the Act. These sections prohibit an employer from interfering with, restraining, or coercing employees in the exercise of their right to engage in certain collective activities and from refusing to bargain in good faith with the lawful representative of its employees.

This record reveals that the Union was certified as the exclusive bargaining representative of Respondent's employees in an appropriate unit as a result of a secret ballot election held pursuant to a consent election agreement voluntarily entered into by the Respondent and the International Union of Operating Engineers. Despite repeated requests by the Union to bargain, Respondent has at no time honored the certification and has taken the position that it has no obligation to do so until so directed by a United States Circuit Court. The Company's position is that its violation is a "technical" refusal to bargain to enable it to

test the certification. The Company insists that the exercise of discretion by the Board under Section 10(j) for an injunction must be premised on more than such a "technical" violation.

The Act empowers the Board, upon the filing of appropriate charges, to issue, hear and determine complaints that employers or labor organizations have engaged in unfair labor practices. Congress was aware, however, that proceedings of this character—which ultimately are reviewable by the Courts of Appeals —are protracted and time consuming and that in "some instances" unfair labor practices could not be corrected by normal procedures "until after substantial injury had been done," and gave or tended to give rise to such serious and unjustifiable interruptions to commerce that their continuance, pending disposition by the Board, would result in irreparable injury to the purposes of the Act. Accordingly, in order to prevent a frustration of the statutory purpose, Congress provided in Section 10(j) of the Act, in pertinent part, that:

> "The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States (including the District Court of the United States for the District of Columbia), within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

As explained in the Senate Report enacting Section 10(j):

> " * * * the relatively slow procedure of the Board hearing and or-

der, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives— the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practice * * *

* * * * * *

"Experience under the National Labor Relations Act has demonstrated that by reason of lengthy hearings and litigation enforcing its orders, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. Under the present act the Board is empowered to seek interim relief only after it has filed in the appropriate circuit court of appeals its order and the record on which it is based. Since the Board's orders are not self-enforcing, it has sometimes been possible for persons violating the Act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation.

"In subsections (j) and (1) to section 10 the Board is given additional authority to seek injunctive relief. By Section 10(j) the Board is authorized, after it has issued a complaint alleging the commission of unfair labor practices by either an employer or a labor organization or its agent, to petition the appropriate district court for temporary relief or restraining order. Thus the Board need not wait if the circumstances call for such relief, until it has held a hearing, issued its order,

and petitioned for enforcement of its order."

■ Three steps are required by Section 10(j) before a district court may issue an injunction.[1] First, there must be a charge alleging that some person has engaged in or is engaging in an unfair labor practice. The second step is the issuance of a "complaint" by the National Labor Relations Board. The third step is a hearing to determine:

(a) If there is reasonable cause to believe that the unfair labor practice stated in the complaint was committed; and

(b) If, under the circumstances, a temporary injunction would be "just and proper."

■ Here, the charge was filed. The complaint was issued. There is reasonable cause to believe that the unfair labor practice has been and is being committed. Admittedly, Respondent has refused repeated and continuing requests of the Union to recognize, meet and bargain with it as the certified and exclusive agent of all employees in the subject unit. The express language of the Act prohibits such conduct and the Courts have consistently ruled that such conduct is violative of Section 8(a) (1) and (5) of the Act.[2] The issue then quickly narrows: Under the total circumstances here, would the issuance of an injunction be "just and proper?"

■ The Court is cognizant that the injunctive relief here sought is for the protection of the public interest and in aid of a policy which Congress has made plain (Title 29, Section 151, U.S.C.A.). For this reason, the area for the exercise of the traditional discretion not to grant an injunction is much more limited. Brown v. Pacific Telephone and Telegraph Company, 218 F.2d 542, 9 C.A. (1955).

■ The Respondent and the Union voluntarily entered into a consent agreement in which both parties agreed to be bound by the results of the election to be conducted by the Board and by the rulings of the Regional Director on any issue arising out of the election. The election was conducted pursuant to the customary practices and procedures of the Board, and a majority of Respondent's employees in an appropriate unit designated and selected as their agent for the purpose of bargaining. Respondent's objections were based upon evidence of three anonymous telephone calls and a disputed statement of one rank and file employee among a unit composed of more than 380 employees. Upon reasonable findings that the objections did not raise material or substantial issues affecting the results of the election, the objections were overruled and the unit, on the basis of its majority vote, was duly certified as the exclusive bargaining agent of all employees in the appropriate unit. Since that date, Respondent has rejected repeated requests of the Union that it recognize, and meet, and bargain with the Union as required by law. Respondent asserts vigorously that the Board has made positively no showing, either at the hearing before the Trial Examiner or before this Court, that the Company is taking any action which could or might be construed as undermining the Union. However, the record reveals that Respondent has expressed its intention to continue to operate the plant through the exercise of normal management functions which Respondent has defined as including "putting on additional shifts, hiring additional employees, reducing shifts, terminating employees, or making other such normal changes in working conditions." The Company has said it intends to do this "without bargaining." (See Joint Exhibit 5). This may or may not be a threat to take uni-

---

1. Douds v. International Longshoremen's Ass'n., 241 F.2d 278, 2 C.A., 1957.

2. General Tube Company, 141 NLRB No. 42; Pacific Multiforms Company, 138 NLRB No. 89; Sumner Sand & Gravel Company, 128 NLRB 1368, enfd. 293 F.2d 754 (C.A. 9); N. L. R. B. v. Taormina Co., 207 F.2d 251 (C.A. 5); N. L. R. B. v. White Construction & Engineering Co., Inc., 204 F.2d 950 (C.A. 5).

lateral action, but the very fact that the Respondent is admittedly refusing to recognize and bargain with the Union is the type of action which inevitably undermines the Union's status and leads to, or tends to lead to, labor disputes *and strikes*. The basic purpose of the Act and of this proceeding is to eliminate the cause of labor disputes which might have this undesirable effect.

Judge Denman's statement in Brown v. Pacific Telephone and Telegraph Company, 9 Cir., 218 F.2d 542, is most applicable here:

> "In view of the irreparable harm which the designated unions may suffer by the drifting away of their members to the union favored by the employers, we think the law entitles the Board to the injunctive relief sought."

Here, testimony has been taken and the case may not be decided by the Board for some months, and to this may be added the time consumed in the Board's enforcement application to the Fifth Circuit and the likely certiorari proceedings to follow. In view of the total circumstances here, the Court is persuaded that it is just and proper to issue interim injunctive relief as prayed for by the Board. In so holding, we do not attempt to pass on the merits of the case. That is a matter for determination by the Board, subject to a review by the Court of Appeals.

Findings of Fact and Conclusions of Law are attached and made a part hereof.

## FINDINGS OF FACT

1. Petitioner is Regional Director of the Fifteenth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about February 23, 1963, International Union of Operating Engineers, AFL–CIO (herein called the Union), pursuant to provisions of the Act, filed a charge with the Board alleging, *inter alia*, that Manning, Maxwell & Moore, Incorporated (herein called Respondent), has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a) (1) and (5) of the Act.

3. On March 19, 1963, upon said charge, the General Counsel of the Board, on behalf of the Board, by petitioner, issued a complaint alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a) (1) and (5) of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, a New Jersey corporation, is engaged in the manufacture, sale and distribution of valves, gauges, and related products at various locations including a plant located at Alexandria, Louisiana, the only plant involved in the instant dispute. In the operation of its business, Respondent annually purchases supplies and materials valued at in excess of $50,000, which are shipped directly to the aforesaid Alexandria plant from points outside the State of Louisiana.

(b) The Union, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(c) All production and maintenance employees employed at Respondent's plant at Alexandria, Louisiana, excluding office clerical employees, guards, foremen, and all other supervisors as defined in the act, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act.

(d) On or about November 15, 1962, the Acting Regional Director of the Fifteenth Region of the Board approved an Agreement for Consent Election executed by the Union and the Respondent in which, *inter alia*, the Union and the

Respondent agreed to the conducting of an election for the purpose of determining whether or not Respondent's employees in the aforesaid appropriate unit desired to be represented for the purpose of collective bargaining by the Union. Said Agreement for Consent Election contained, *inter alia,* the following provisions:

"1. SECRET BALLOT.—An election by secret ballot shall be held under the supervision of the said Regional Director, among the employees of the undersigned Employer in the unit defined below, at the indicated time and place, to determine whether or not such employees desire to be represented for the purpose of collective bargaining by (one of) the undersigned labor organization(s). Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board, provided that the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election, and provided further that rulings or determinations by the Regional Director in respect of any amendment of any certification resulting therefrom shall also be final.

\*   \*   \*   \*   \*   \*

"6. OBJECTIONS, CHALLENGES, REPORTS THEREON.— Objections to the conduct of the election or conduct affecting the results of the election, or to a determination of representatives based on the results thereof, may be filed with the Regional Director within 5 days after issuance of the Tally of Ballots. Copies of such objections must be served upon the other parties at the time of filing with the Regional Director. The Regional Director shall investigate the matters contained in the objections and issue a report thereon. If objections are sustained, the Regional Director may in his report include an order voiding the results of the election and, in that event, shall be empowered to conduct a new election under the terms and provisions of this agreement at a date, time, and place to be determined by him. If the challenges are determinative of the results of the election, the Regional Director shall investigate the challenges and issue a report thereon. The method of investigation of objections and challenges, including the question whether a hearing should be held in connection therewith, shall be determined by the Regional Director, whose decision shall be final and binding."

(e) On December 7, 1962, a majority of Respondent's employees in the aforementioned appropriate unit, by secret-ballot election conducted under the supervision of the Regional Director of the Board's Fifteenth Region, pursuant to the said Agreement for Consent Election, designated and selected the Union as their exclusive representative for the purposes of collective bargaining with Respondent.[1]

(f) On or about December 14, 1962, Respondent filed objections to the election alleging that agents and representatives of the Union had threatened certain of Respondent's employees in order to persuade said employees to vote for the Union.

(g) On February 8, 1963, after an investigation and consideration of the evidence relating to the Respondent's objections, the Acting Regional Director of the

1. The results of the election as disclosed by the official Tally of Ballots were as follows:

Approximate number of eligible voters ........................397
Void ballots .................... 2
Votes cast for Petitioner [the Union] ........................203
Votes cast against participating labor organization ...............177
Valid votes counted ..............380
Challenged ballots ................ 0

Fifteenth Region of the Board duly issued his Report on Objections to Election overruling Respondent's objections, and on the basis of the results of the election, certified the Union as the exclusive bargaining representative of all the employees of Respondent in the appropriate bargaining unit hereinbefore described.

(h) At all times since February 8, 1963, as a result of the election proceedings at certification, the Union has been, and is now, the designated representative for the purposes of collective bargaining of a majority of the employees in the appropriate bargaining unit, and, by virtue of Section 9(a) of the Act, has been, and is now, the exclusive representative of all the employees of Respondent in the said unit for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment, and other terms and conditions of employment.

(i) Since on or about February 14, 1963, and continuing to date, Respondent, notwithstanding the Union's repeated requests that it do so, has refused, and is continuing to refuse, to recognize the Union and to meet with it as the exclusive bargaining representative of Respondent's employees in the aforementioned appropriate bargaining unit to discuss and to bargain collectively with respect to wages, hours, rates of pay, and other terms and conditions of employment of the employees for which the Union has been certified in the aforesaid election. More specifically:

(1) Respondent has refused, and is continuing to refuse, after the certification, to meet with the Union for collective bargaining purposes on the expressed grounds that it did not believe that the election was representative of the free choice of its employees and did not agree with the certification issued by the National Labor Relations Board and did not feel that it was obligated to bargain with the Union as the representative of its employees.

(2) On or about April 24, 1963, the Union again requested Respondent to recognize and bargain with the Union and to refrain from making any unilateral changes in the wages, hours, and other terms and conditions of employment of employees in the appropriate bargaining unit without prior notice and bargaining with the Union as the certified bargaining agent of all employees in said unit; and in response to said request, Respondent, by letter dated May 2, 1963, reiterated its refusal to recognize and bargain with the Union.

(3) On April 16, 1963, a hearing on the complaint against Respondent, issued by the General Counsel of the National Labor Relations Board, on behalf of the Board, by the Regional Director of the Fifteenth Region of the Board, alleging that Respondent had unlawfully refused to recognize and bargain with the Union in violation of Section 8(a) (1) and (5) of the Act, was conducted at Alexandria, Louisiana. At the hearing on the complaint Respondent did not contend the commission of any fraud, misconduct, or gross mistake on the part of the Regional Director in connection with the election procedures, nor was there anything in the record of the representation proceeding to indicate anything of such a nature.

(4) At a hearing before a Trial Examiner of the Board, held on April 16, 1963, the Attorney acting for the General Counsel of the Board sought to amend the complaint to allege independent violations of Section 8(a) (5) of the Act of a substantive nature, i. e., unilateral changes of wage rates and working conditions, as distinguished from the gravamen of the original complaint, i. e., the simple refusal by Respondent to recognize and abide by the certification while seeking a Court review of the Report on Objections. The Trial Examiner permitted the General Counsel's representative to adduce evidence to show any substantive refusal to bargain and, upon a failure to make such showing, the Trial Ex-

aminer denied the amendment to the complaint.

(5) Under date of April 30, 1963, John P. von Rohr, Trial Examiner, issued an Intermediate Report, in which he set forth his findings of fact, conclusions of law, and recommendations to the Board, finding, *inter alia,* that Respondent had engaged in, and was engaging in, unfair labor practices in violation of Section 8(a) (1) and (5) of the Act, and directing Respondent to cease and desist from refusing to bargain with the Union, and to bargain, upon request, with the Union as the exclusive bargaining agent of all employees in the aforementioned appropriate bargaining unit. As noted in the Intermediate Report, "no testimony was taken at the hearing in the instant proceeding, there being no contention by the Respondent that it had newly discovered evidence or evidence which was not available to it at the representation state." The Respondent has not complied, or indicated any intention to comply.

(j) By the acts and conduct set forth above in Findings of Fact 4(i) and subparagraphs (1) and (2) thereof, Respondent has failed and refused, and is failing and refusing, to bargain collectively in good faith with the Union as the certified collective bargaining representative of its employees.

5. Respondent's acts and conduct set forth above in Findings of Fact 4(i), subparagraphs (1) and (2) thereof, and (j) occurring in connection with Respondent's operations have a close, intimate, and substantial relation to trade, traffic, and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

6. It may be fairly anticipated that, unless enjoined, Respondent will continue to fail and refuse to bargain collectively in good faith with the Union as the designated representative of its employees. The Court is fully aware of Re-

spondent's defense that it is merely pursuing the statutory scheme of review and that its violation is only technical.

7. Unless the continuation of the aforesaid failure to bargain is restrained, a serious flouting of the Act will continue with the result that enforcement of important provisions of the Act and of the public policy will be thwarted before the matter can be handled through the regular procedures of Board order and enforcement decree. Unless injunctive relief is obtained, it may be fairly anticipated that Respondent will continue its refusal to bargain during the proceedings before the Board and during proceedings before a court of appeals for an enforcing decree, so that before it is placed under any legal restraint to bargain with the Union, the Union's majority status may have been so dissipated by the unfair labor practices that the Union will be unable successfully to function as an effective collective bargaining representative of the employees, to the detriment of the policies of the Act and the interests of the employees involved.

8. In addition, unless restrained, Respondent's unfair labor practices may cause a strike among its employees with the hardships and dislocations resulting from such.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(j) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is engaged in commerce or in an industry affecting commerce.

(b) Respondent has engaged in unfair labor practices within the meaning of Sections 8(a) (1) and (5) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. By its admitted commission of an unfair labor practice in refusing to bar-

gain, Respondent has set in motion a procedure under which it may obtain an Appellate Court review of the representation proceeding. However, there is neither statutory nor decisional support for the proposition that an employer may legally withhold recognition from the Union until some uncertain future date, when all administrative proceedings have been exhausted, court review obtained, writs acted upon, and an enforcement order obtained.

4. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, Respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth above in Findings of Fact 4(i), subparagraphs (1) and (2) thereof, and (j), acts or conduct in furtherance or support thereof.