George **SQUILLACOTE, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**GENERAC CORPORATION, Respondent.**

No. 69-C-380.

United States District Court
E. D. Wisconsin.

Sept. 29, 1969.

George Squillacote, pro se.

Reinhart, Boerner, Van Deuren & Norris, Milwaukee, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This proceeding is before the court on a petition filed by a regional director of the National Labor Relations Board pursuant to § 10(j) of the National Labor Relations Act for a temporary injunction pending the final disposition by the board of a charge filed by District 48, International Association of Machinists and Aerospace Workers, AFL-CIO. The union charges the Generac Corporation with unfair labor practices within the meaning of §§ 8(a) (5) and (1) of the act. These sections prohibit an employer's refusing to bargain in good faith with the duly designated collective bargaining representative selected by a majority of its employees in an appropriate unit.

Generac Corporation, a Wisconsin corporation, maintains its plant and principal offices in Genesee, Wisconsin, where it is engaged in the manufacture of generators. The parties acknowledge that Generac is engaged in commerce and is currently engaged within this judicial district in transacting its business.

The union was certified by the board on June 14, 1963, as the exclusive bargaining agent for respondent's employees in a unit comprising all production and maintenance employees.

The parties have negotiated a series of collective bargaining agreements since that time, the most recent of which was effective from April 8, 1967, and by its terms was to remain in effect until October 13, 1969. In November, 1968, Generac requested the union to enter into negotiations to commence in March, 1969 for an extension of that collective bargaining agreement.

The gravamen of the union complaint, which is the basis of this action and of the charge filed with the board, is stated in the board's petition in this action:

"(f) Thereafter and in anticipation of forthcoming negotiations, the union, since on or about February 5, 1969 and continuing at all times thereafter, more particularly on or about February 5, 11, March 10, 18, 21, April 14, May 8, 13 and 16, 1969, requested that respondent furnish a complete list of names of all employees designating the sex of each employee and the actual wages paid per hour to each employee, all of which information is necessary and needed by the union in the administration of the existing collective-bargaining agreement and in negotiating a new collective-bargaining agreement.

"(g) At all times since on or about February 5, 1969 and continuing thereafter, respondent refused and continues to refuse to furnish the information described above in subparagraph (f) and by so doing has refused and continues to refuse to bargain in good faith with the union."

Section 10(j) of the act gives the court jurisdiction to grant such temporary relief as is "just and proper" upon a finding that there is reasonable cause to believe that a violation of the act, as charged, has been committed. Lebue for and on Behalf of the N. L. R. B. v. Manning, Maxwell and Moore, Incorporated, 218 F.Supp. 702, 704–705 (W.D.La.1963).

## I. REASONABLE CAUSE

The general rule regarding an employer's duty to supply a union with wage and other economic data is stated in N. L. R. B. v. John S. Swift Company, Inc., 277 F.2d 641, 645 (7th Cir. 1960):

"Although the particular circumstances in each case must be considered in determining whether or not the statutory obligation to bargain in good faith has been met (N. L. R. B. v. Truitt Mfg. Co., 1956, 351 U.S. 149, 153, 76 S.Ct. 753, 100 L.Ed. 1027), there are numerous decisions to the effect that a refusal by an employer to supply pertinent and relevant wage data concerning wage rates of the employees is a violation of the obligation to bargain in good faith."

Generac does not deny that knowledge of employees' present wage rates is relevant, but it contends that actions of the union relieve it from any duty to provide the union with current wage information.

Generac contends that the union has effectively waived its right to the wage data. The union already has information about base rates of pay for each job classification. If it is also given information about total wages for each employee, as requested, it can calculate the amount of total merit pay for each employee. The court will assume that ordering Generac to reveal the demanded wage figures is, therefore, tantamount to ordering it to reveal information about merit raises. Thus, the parties' supplementary agreement of March 28, 1966 regarding the disclosure of information on merit raises is applicable:

> "The company and the union have agreed that the company shall advise the union shop committee of the amount of merit raises given periodically * * *. However, it is understood by all concerned that this information is not to be made available by the committee in operating under the contract. The company reserves the right to cease releasing this information if it is a cause for any employee unrest or dissension."

Mr. O. H. Seybold, assistant general manager of Generac, testified before a trial examiner that in April, 1967

> "We had an example where we were given direct information that one of the committee people had discussed this confidential wage information with a third party, an employee of the company * * *."

In addition, he testified

> "There were prior instances that were not of the same aggravated condition as this particular case which culminated the disclosure of information."

The union has refused the demands of Generac that its representatives state affirmatively that it will abide by the 1966 agreement against disclosure of this information. However, there is no evidence that Generac ever investigated the reported disclosure in April, 1967, nor any indication what form any employee dissension, if there was any, may have taken.

Since April, 1969, Generac has been supplying the union in piecemeal fashion the actual wage rate of some employees by sending it payroll change notice slips. To date, this information has been provided to the union for approximately 100 employees, about one-half the employees in the bargaining unit. The stated purpose of such piecemeal compliance with the union request is to enable Generac to determine if the information is being used properly by the union. However, there is no allegation by Generac that the union has misused the information it has been receiving since April, 1969.

■ Even assuming that the agreement of the parties in 1966 is binding, and that it grants the company an absolute right to withhold wage data from the union following some breach of the agreement by the union, it seems doubtful, absent some allegation that the alleged disclosure caused some employee dissension, that the union violated the agreement in April, 1967, or before. Generac is not justified in relying on an episode in 1967 in view of the fact that for the past five months the information has been received without abuse by the union. Accordingly, the court cannot say that the alleged waiver supports the company's position.

■ Generac also points out that the union could poll its own workers to obtain the desired information. However, this fact is no justification for Generac's refusing to supply the information. In N. L. R. B. v. Northwestern Publishing Company, 343 F.2d 521, 525 (7th Cir. 1965), the court held that "although the information might be secured from the employees themselves, this did not relieve the company from this duty [of supplying the information]."

■ Generac further contends that the union wanted, but was not entitled to receive, the requested information incorporated into the seniority list. By contract the company was required to provide such a list periodically to the union. However, the objection of Generac to supplying the information was never directed to the physical form in which it was to be supplied but was directed to supplying it at all. The union indicated during the testimony before the board's trial examiner on July 22, 1969 that it would accept the information on a list separate from the seniority list. Therefore, it cannot be said that this alleged union demand makes clearly erroneous the board's conclusion that there exists reasonable cause to find a violation.

■ Generac also refuses to supply information identifying the sex of employees in the bargaining unit. The contract of the parties, section 4.07, provides:

"With respect to merit raises, the Company will consider male and female employes on an equal basis and there will be no discrimination between male and female employes concerning eligibility for merit raises."

Knowledge of the sex and actual wages of each employee in each job classification could disclose a pattern of discrimination which violates the terms of the contract. Therefore, knowledge of the sex of the employees is relevant to the ability of the union to police the agreement.

Generac contends that information revealing the sex of the parties is not available to it, and that it is discouraged from keeping this type of record by state and federal law. However, officials of Generac did acknowledge at the July 22, 1969 hearing that its employment records contain the requested information, and that it has used such records in preparing payroll change notice slips more than 100 times in the past five months. This contention does not make clearly erroneous the board's conclusion that it has reasonable cause to find a violation.

## II. INJUNCTIVE RELIEF

■ More is required to justify the granting of injunctive relief under § 10(j) than a showing of reasonable cause. The court in Minnesota Mining and Manufacturing Company v. Meter, 385 F.2d 265, 270 (8th Cir. 1967) observed:

"While some courts have used language which, considered out of context, would indicate that a finding of 'reasonable cause' alone is sufficient to grant injunctive relief, the force of such expressions is diminished when considered in light of the circumstances of the case, which clearly demonstrate that there existed a probability that the purposes of the Act would be frustrated without injunctive relief preserving and restoring the status quo."

■ The legislative history of the act indicates that a remedial purpose of the act which may be assisted by injunctive relief is the encouraging of collective bargaining and the free flow of commerce:

" * * * the relatively slow procedure of the Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining."

S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947).

Previous cases indicate that there are a number of situations in which injunctive relief is to be granted. Thus, courts have granted injunctive relief to prevent the undermining of the union by discharge of union members, Angle v. Sacks, 382 F.2d 655 (10th Cir. 1967); by intimidation of the workers, Reynolds, for and on Behalf of N. L. R. B. v. Curley Printing Company, 247 F.Supp.

317 (M.D.Tenn.1965); by recognizing an uncertified union, Brown, for and on Behalf of N. L. R. B. v. Pacific Telephone and Telegraph Company, 218 F.2d 542 (9th Cir. 1954); or by continuing to act unilaterally after the union was certified, Lebue, for and on Behalf of N. L. R. B. v. Manning, Maxwell and Moore, Incorporated, 218 F.Supp. 702 (W.D.La.1963). Although relief was denied in McLeod, for and on Behalf of N. L. R. B. v. General Electric Company, 366 F.2d 847 (2d Cir. 1966), it is not deemed controlling here since it rested on distinguishable circumstances.

In Minnesota Mining and Manufacturing Company v. Meter, 385 F.2d 265, 270 (8th Cir. 1967), the court observed:

"Courts have not established uniform or rigid guidelines for Section 10(j) cases. Rather they have resolved the question of the propriety of injunctive relief on the basis of the facts and circumstances peculiar to each case."

The company is to be ordered to furnish a list of names designating sex and actual wages paid per hour, as provided in paragraph (a) of the board's proposed order. Such data is to be furnished promptly by the company. However, the injunctive provisions submitted in paragraphs (b) and (c) of the said proposed order are deemed too broad and will not be granted.

If the board encounters dilatory conduct on the part of the company in supplying the data covered in paragraph (a), the board may petition this court for a further order.

Now, therefore, it is ordered that the respondent, Generac Corporation, promptly provide to District 48, International Association of Machinists and Aerospace Workers, AFL-CIO, a complete list of names of all employees designating the sex of each employee and the actual wages paid per hour to each employee.