Michael **DUNN, Regional Director of the Sixteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD**

v.

**PILGRIM INDUSTRIES, INC.**

**No. L–85–194–CA.**

United States District Court,
E.D. Texas,
Lufkin Division.

Dec. 27, 1985.

Wayne Rustin, Glyn Cook, Fort Worth, Tex., for plaintiff.

Yona Rosen, Dallas, Tex., for the Union.

Allen D. Schoolfield, P.C., Dallas, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

STEGER, District Judge.

This cause came to be heard upon the verified petition of Michael Dunn, Regional Director of Region Sixteen of the National Labor Relations Board (hereinafter the Board), for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended, (hereinafter the Act), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed for in said petition. Respondent has filed an answer to said petition. All parties agreed to stipulate the entire content of the record in Board Case No., 16–CA–12241 which was heard before Administrative Law Judge, Richard J. Linton on October 22, 1985. Instead of presenting witnesses, all parties were afforded full opportunity to be heard

in oral argument on the issues, evidence and the law at a hearing on October 30, 1985. Having reviewed the testimony presented and having duly considered all exhibits and arguments before it, the Court hereby enters these its Findings of Fact and Conclusions of Law in conformity with Fed.R.Civ.P. 52(a).

Any finding of fact which constitutes a conclusion of law shall be deemed a conclusion of law. Any conclusion of law which constitutes a finding of fact shall be deemed a finding of fact.

### Findings of Fact

1. Petitioner is Regional Director of Region Sixteen of the Board, an agency of the United States, and filed the petition for and on behalf of the Board.

2. Respondent, Pilgrim Industries, Inc., is now and has been at all times material herein, a corporation duly organized under and existing by virtue of the laws of the State of Texas and is engaged in the processing, packaging and sale of chicken broilers in Lufkin, Texas, the only facility involved in this proceeding. Respondent operates five poultry processing plants in Texas, with its principal office and place of business located in Pittsburg, Texas.

3. At all times material herein, the following persons occupied the positions set forth opposite their respective names, and have been and are now agents of Respondent within the meaning of Section 2(13) and are supervisors within the meaning of Section 2(11) of the Act:

Lonnie Bo Pilgrim . . . . . . Chief Executive Officer
Elray Woods . . . . . . . . . . Plant Manager

4. Respondent is now, and has been at all times material herein an employer engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

5. Pluss-Tex Poultry Company, (hereinafter Pluss-Tex) was formerly engaged in the processing, packaging and sale of chicken broilers in Lufkin, Texas.

6. The United Food and Commercial Workers, Local 540, AFL–CIO, CLC, (hereinafter the Union), is a labor organization within the meaning of Section 2(5) of the Act and exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and conditions of work.

7. The Union was elected by a majority vote of Pluss-Tex employees and certified by the Board as the exclusive bargaining agent for the production workers on April 15, 1955.

8. There have been a series of three year contracts between the Union and Pluss-Tex since April 15, 1955. The latest contract was effective from May 31, 1982 to June 3, 1985.

9. Respondent was aware of the contractual relationship between the Union and Pluss-Tex prior to June 3, 1985.

10. On May 29, 1985, Respondent rejected the contract between Pluss-Tex and the Union. *See* G.C. Exhibit 7.

11. Commencing on May 29, 1985, and continuing to date, the Union has requested and is requesting Respondent to bargain collectively with respect to rates of pay, wages, hours of employment and other terms and conditions of employment as the exclusive collective bargaining representative of all employees in the bargaining unit.

12. On or about June 3, 1985, Respondent acquired the Pluss-Tex plant in Lufkin, Texas, and assumed operations of the plant at the same location, producing the same product, utilizing the same production methods and employing the same employees.

13. On June 3, 1985, Respondent instituted a pension plan and a 154a per hour pay increase in all of its plants, including the Lufkin operation.

14. The pension plan and pay increase were unilateral acts of Respondent without negotiation, consultation or approval of the Union.

15. On June 26, 1985, Respondent unequivocally advised the Union that it would not bargain with the Union until a majority

status was established in an appropriate bargaining unit.

16. On August 4, 1985, Respondent instituted a second work shift at the Lufkin plant. Additional employees were added to cover the second shift. These additions approximately doubled the number of employees at the Lufkin location.

17. The institution of a second work shift was a unilateral change on the part of Respondent without negotiation, consultation, or approval of the Union.

18. On August 30, 1985, the General Counsel of the Board, on behalf of the Board, by petitioner, issued a Complaint and Notice of Hearing in Case No. 16–CA–12241, pursuant to Section 10(b) of the Act, alleging, *inter alia,* that Pilgrim Industries, Inc., herein called Respondent, has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(a)(1) and (5) of the Act. Thereafter, Petitioner filed the instant action seeking a temporary injunction pursuant to 10(j) of the Act.

19. The Board has reasonable cause to believe that Respondent has failed and refused, and is failing and refusing to bargain collectively and in good faith with the representative of its employees and Respondent thereby has engaged in and is engaging in unfair labor practices affecting commerce within the meaning of Section 8(a)(1) and (5) and Sections 2(6) and (7) of the Act.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter of the proceeding pursuant to § 10(j) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(j).

2. Respondent is an employer engaged in commerce within the meaning of Section 2(6) and 2(7) of the Act.

3. Lonnie Bo Pilgrim, Chief Executive Officer, and Elray Woods, Plant Manager, are agents of Respondent within the meaning of Section 2(13) and are supervisors

within the meaning of Section 2(11) of the Act.

4. A district court has authority to grant temporary injunctive relief against a party alleged to have committed an unfair labor practice if the court finds:

a. the Board has reasonable cause to believe that an unfair labor practice has occurred; and

b. injunctive relief to be "just and proper." *See Boire v. International Brotherhood of Teamsters,* 479 F.2d 778 (5th Cir. 1973); *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185 (5th Cir.1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976).

### Reasonable cause

5. The Board has reasonable cause to believe that Respondent has violated Sections 8(a)(1) and 8(a)(5) of the Act.

Section 8(a)(1) provides that an employer commits an unfair labor practice when it interferes with, restrains or coerces employees in the exercise of the right to bargain collectively. Section 8(a)(5) proscribes employer refusal to bargain. The Board satisfies their minimal proof requirements of reasonable cause if the legal theories upon which they proceed are not insubstantial or frivolous. *Boire,* 479 F.2d at 792.

This Court should find that reasonable cause exists if the facts of this case support the Board's legal theories of employer violations. *See Kobell v. Surburban Lines, Inc.,* 731 F.2d 1076 (3rd Cir.1984) (adopting Fifth Circuit "reasonable cause" test). Respondent has stipulated before the ALJ that it produces the same product with the same equipment and by the same processes as did Pluss-Tex, its predecessor. (Tr. 25–27). There is a substantial identity of employees between Pluss-Tex and Respondent. (Tr. 25). Many of Respondent's customers were also customers of Pluss-Tex. (Tr. 107–108).

Petitioner contends that the above facts are relevant to a finding that Respondent is

a "successor employer" and as such has a duty to negotiate with the Union that had been recognized by Pluss-Tex as the exclusive bargaining agent for its member employees. *See N.L.R.B. v. Burns International Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *N.L.R.B. v. Auto Ventshade, Inc.*, 276 F.2d 303 (5th Cir.1960).

Respondent contests whether it is a "successor employer," but argues that even if it is, there is no duty to bargain because the Union no longer enjoys a majority status in the bargaining unit. (Tr. 19). Respondent does not dispute that it has refused to recognize or bargain with the Union. (Tr. 101). Further, Respondent stipulates that it has instituted pay increases, a pension plan and a second work shift without negotiation with the Union representative. (Tr. 30–31).

■ In *Boire*, the Fifth Circuit gave guidance to district courts faced with § 10(j) petitions. First, the district court should not attempt to dispose of the legal issues in the underlying unfair labor practice action. The court's analysis should proceed only as far as necessary to determine whether the Board's theories are either insubstantial or frivolous. *Boire*, 479 F.2d at 792. In the instant case, both Petitioner and Respondent have briefed, argued, and presented evidence on issues that, if reached, would take this Court beyond its limited role. The Court is of the opinion that Congress gave the N.L.R.B. broad investigatory and adjudicatory powers to aid in the resolution of labor disputes and implementation of a national labor policy. Accordingly, this Court defers to their resources and expertise the resolution of the following issues: (1) Respondent's duty to bargain, if any, as a "successor employer" under *Burns, supra*, (2) if such duty exists, whether Respondent has sufficient objective evidence to support a good faith doubt of the continuing majority status of the Union, *N.L.R.B. v. Gulfmont Hotel Co.*, 362 F.2d 588 (5th Cir.1964) (Board decides questions on good faith doubt of majority), and (3) the composition of the bargaining unit. *Boire*, 515 F.2d at 1192.

■ The Court is of the opinion that in light of the admissions and stipulations of Respondent and the relevant statutory language found in Sections 8(a)(1) and 8(a)(5) that Petitioner has maintained their minimal burden of proof of reasonable cause. The Board will, in due course, resolve whether such unfair labor practices have in fact occurred. Suffice it to say that for the purposes of this § 10(j) proceeding the facts in evidence support a finding that the theories upon which the Board relies are not insubstantial or frivolous. Petitioner has reasonable cause to believe that violations of the Act have occurred at Respondent's plant.

### Just and proper

6. There is insufficient evidence to persuade this Court that a mandatory decree forcing Respondent to recognize and negotiate with the Union is equitably necessary to assure that a final order of the Board will not be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated.

The Board and Union maintain that injunctive relief is proper for essentially four reasons. First, the Union will "inevitably" suffer loss of support, attrition of membership or loss of majority during the pendency of Board proceedings. Second, the Board argues that the harm suffered by decrease in Union membership cannot be remedied by a Board order and is, therefore, irreparable. Third, the Board contends that bargaining unit employees will be denied the potential benefits of collective bargaining. Finally the Union contends that it is inequitable to allow Respondent to benefit by saving the costs of collective bargaining and erosion of Union strength while it refuses to bargain.

The Court finds fault with Petitioners' arguments in two respects. First, their

conclusion that inevitable irreparable harm will result from the refusal to bargain assumes the truth of their premise that Respondent has an obligation to bargain. This is the issue now before the Board. Second there is little, if any, evidence of specific facts to support these general conclusions and speculations.[1]

Although Petitioners need not prove their case in this Court by a preponderance of the evidence or make a showing of irreparable harm, their case would be bolstered by some evidence that actions of the Respondent have caused, or are likely to cause, some objective discernable harm or prejudice to Union membership or support. The specific facts that underlie their general conclusions that harm is inevitable would assist a court of equity in fashioning relief proper under the particular circumstances.

■ A court of equity maintains equitable powers to mold each decree to the necessities of the case. *Boire,* 515 F.2d at 1193. Although the equitable relief obtainable through 10(j) proceedings may not be governed solely by the rules of equity applicable to civil litigation, the Court in its discretion may rely in part on general equitable principles. *Id.; Cf. Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567 (5th Cir.1974) (requirements for a preliminary injunction); *Mississippi Power & Light v. U.S. Gas Pipe Line,* 760 F.2d 618 (5th Cir.1985) (same). As such, courts have been able to fashion 10(j) relief for a number of reasons. *See, e.g. Sheeran v. American Commercial Lines, Inc.,* 683 F.2d 970 (6th Cir.1982) (circumstances of the case warrant judicial action in the public interest); *Boire,* 515 F.2d at 1193 (pres-

ervation of the status quo is at least one consideration); *Lebus v. Manning, Maxwell & Moore, Inc.,* 218 F.Supp. 702 (W.D. La.1963) (stabilization of labor relations).

■ The Court is of the opinion that there is no evidence that Union membership has decreased or suffered due to actions of Respondent or that recruiting new Union members has been hampered by Respondent's activities. Additionally, the Fifth Circuit has stated that in cases of successor employers, the Board is to look to the time of succession to determine if the Union represents a majority of the employees. *N.L.R.B. v. Auto Ventshade,* 276 F.2d at 307.

There is no evidence to suggest that any harm done cannot be remedied by a Board order. Once the Board determines by a preponderance of the evidence that an employer is engaging in unfair labor practices the Board may issue a cease and desist order to the employer as well as take "such affirmative action ... as will effectuate the policies of the Act." 29 U.S.C. § 160(c). The scope of the relief to be granted by the Board is largely a question of administrative discretion. *N.L.R.B. v. Truitt Mfg. Co.,* 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956). The argument that the Board cannot restore loss of membership is merely an extension of the argument above, and assumes facts not in evidence; that there has been or will be a decline in membership due to the recent changes.

Third, the Union argues that, absent injunctive relief, employees will be denied a legal right to bargain collectively. As in *Boire,* regardless of how this Court rules

---

1. The parties have stipulated that the evidentiary record adduced at the hearing before the ALJ would suffice for the evidentiary record in this 10(j) proceeding and therefore no witnesses were called or evidence admitted here. The bulk of the record compiled before the ALJ was directed to the issues of union majority, good faith doubt of continuing majority and composition of the bargaining unit. This is entirely proper because, as noted above, those are precisely the issues with which the Board must

deal. While using that record in this case has the obvious benefit of conserving time and resources, it is not without flaw. The disadvantage here is that the issues for determination by the Board and those for determination in this Court are not completely coextensive. Specifically, the Board is not concerned with the equitable necessity of a temporary injunction, and as a result the evidentiary record concerning that issue is sparse.

on the mandatory bargaining issue, one party stands to be hurt in the sense of injury to a legal right. Either an employer will be forced to bargain with a Union with which it is not required to bargain or employees will be temporarily denied their contractual right to bargain collectively.

Given this choice, the Court chooses to follow the reasoning in *Boire* and await the pronouncement of the Board. There is scant evidence in the record that failure to issue a *de facto* bargaining order will injure the Union to the point where it cannot recover. To the contrary, the evidence suggests that the Union has been in operation for thirty years at the Lufkin plant. (Tr. 38). The Union maintains that it has in the past, and currently, represents a majority of the production employees. It is reasonable to infer that a base of support built over the span of three decades will not be seriously jeopardized by the temporary continuation of the non-bargaining status. *Boire*, 515 F.2d at 1194.

The Court also finds support in its conclusion by the absence of substantial evidence on the points listed below. Although none standing alone is decisive, the sum of their absences persuades the Court that mandatory injunctive relief is not equitably necessary in this case. First, the record does not reflect employee dissatisfaction with the current status. The record is devoid of any suggestion that employees have considered strikes, work slow downs, violence or any other expression of dissatisfaction. Second, there is no evidence that Respondent is using this interim period to obtain a strategic numerical advantage over the employees. Respondent has neither discharged, locked out, nor overtly encouraged employee rejection of the Union. Third, there is no evidence that Respondent has favored or supported a competitor union. Fourth, there is no evidence that Respondent has exerted economic or social pressures on employees to discourage Union membership or encourage defection from the ranks of the Union.

Although Respondent has admitted initiating unilateral changes in the Lufkin plant, all parties agree that the employees have benefitted. Respondent has not selectively implemented policies which benefit only non-Union employees or Union defectors. Second, neither the employees, Union nor the N.L.R.B. wish to rescind any of the unilateral changes made by Respondent.

The Court recognizes that the Union has been caught upon the horns of a dilemma. While the Union might justifiably argue that the pay raise and pension plan instituted by Respondent are attempts to lure Union employees away from the rank and file, the Union cannot object to these changes (other than on procedural grounds) because to do so would cast it in an unfavorable light in the eyes of its members. Since all have agreed that the changes were beneficial to employees, the Union is now in the position of objecting; not to the fact that its members were benefitted, but that the benefits were not conferred with its concurrence. The Court does not view that the change in employee benefits was an attempt by Respondent to exert economic pressure upon employees in an effort to undermine Union strength. Respondent has testified that he operates five processing plants. (Tr. 85). Respondent also testified that all plants were operated under a single policy which was determined by Pilgrim, the Chief Executive Officer (Tr. 97). Respondent contends the benefits were increased across the board and not just at the Lufkin plant. It is not reasonable to infer from these circumstances that implementation of changes in employee benefit plans was meant to undermine Union support at the Lufkin facility.

Viewed from a larger perspective, there has been no showing of a significant financial loss inflicted upon either the employees or the Union. There is no evidence that the public will suffer with loss of a valuable public service if the Court does not intervene with the issuance of mandatory bargaining order.

Although there is no evidence that Respondent had unfairly capitalized on the current state of relations between itself and the Union, the Court is aware that the possibility of abuse exists. The Court is, therefore, of the opinion that, pursuant to § 10(j) of the Act, the following prohibitory order is just and proper and will best preserve the legal and factual issues pending final action by the Board.

It is, therefore, ORDERED, ADJUDGED and DECREED that pending the final disposition of the matters involved before the National Labor Relations Board, Respondent, its officers, representatives, agents, servants, employees, attorneys and all persons acting in concert or participation with them be, and hereby are enjoined and restrained from committing any act or implementing any policy at the Lufkin plant with the intent or effect of eroding employee support of or membership in the Union and from attempting to dissipate Union strength in any unlawful manner in the future. It is further

ORDERED, ADJUDGED and DECREED that there be no recission of the pay increase, pension plan or second work shift instituted at the Lufkin plant. Further, the Court declines to use the mandatory injunction as a *de facto* bargaining order based upon the evidence before it. Therefore, no such order will issue. This temporary relief will cease to be of force and effect upon issuance of a final order by the Board.

SO ORDERED.