Sandra **DUNBAR**, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**LANDIS PLASTICS, INC.**, Respondent.

Civil Action No. 96–CV–1765.

United States District Court, N.D. New York.

Sept. 3, 1997.

National Labor Relations Board, Region Three, Buffalo, NY (Beth Mattimore, of counsel), for Petitioner.

Satter & Connor, Syracuse, NY (Mairead E. Connor, of counsel), for United Steelworkers of America, AFL–CIO, District 4.

Bond, Schoeneck & King, Syracuse, NY (Thomas G. Eron, of counsel), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL (Richard B. Lapp, Douglas A. Darch, Andrew M. Altschul, of counsel), for Respondent.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Petitioner Sandra Dunbar, regional director of the National Labor Relations Board

**172**

("NLRB"), moved by an order to show cause for leave to amend her petition and resume proceedings in this action against respondent Landis Plastics, Inc. ("Landis") pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). Dkt. No. 63. Landis opposed the request and requested a variety of relief ranging from outright denial of the motion and dismissal of the underlying petition to expedited discovery and evidentiary hearings regarding the motion to amend and resume proceedings. Because I find that justice so requires, I hereby grant petitioner's motion to amend the petition and resume Section 10(j) injunction proceedings.

## BACKGROUND

### I. Procedural Background

The procedural history of this relatively young case is already complex. On November 7, 1996, the NLRB filed its Section 10(j) petition and order to show cause for injunctive relief against Landis.[1] Dkt. No. 1. Landis responded initially with an order to show cause of its own to expedite discovery and to compel discovery in this matter. Dkt. No. 7. The NLRB then cross-moved for a discovery protective order. Dkt. No. 17. I heard extensive oral argument on the motions on November 29, 1996. Dkt. No. 23. At that time, I directed the parties to submit evidentiary affidavits regarding the injunction request. However, although the NLRB submitted evidentiary affidavits and Landis made a motion to strike certain affidavits,[2] further court action became unnecessary because the parties reached a settlement on December 16, 1996. On December 20, 1996, I granted the NLRB's request for a stay in this action pending "compliance by Respondent with the terms of the aforementioned settlement agreement." Dkt. No. 61. The request I signed as an order stated that "[o]nce compliance with the settlement agreement has been completed, Petitioner

will notify the Court and withdraw the petition." *Id.*

The legal cease fire in federal court broke down on August 7, 1997, when the NLRB filed its latest order to show cause requesting permission to amend and resume. Dkt. Nos. 63–65. Because I have received extensive briefing on this motion and am fully familiar with the facts of this case given my involvement in the litigation during November 1996, I deny Landis' request to further delay this matter by pursuing discovery and conducting an evidentiary hearing on the limited motion to amend and resume. As discussed more fully below, there is ample support for the NLRB's request to amend its petition and resume these proceedings.

### II. Factual Background

Landis is a plastics manufacturing plant located in Solvay, New York. In mid-April 1996, local representatives of the United Steelworkers of America, AFL–CIO, union ("United Steelworkers") began a drive to organize the plant. Throughout the organizing campaign, incidents between union supporters and management took place, one of which allegedly culminated in an employee's discharge. The incidents formed the basis of an NLRB investigation that began in late spring. The NLRB issued a Second Amended Consolidated Complaint and Notice of Hearing on October 25, 1996, in which it alleged that Landis engaged in unfair labor practices throughout the union organizing drive. In response to additional unfair labor practice charges by the union, the NLRB issued Third, Fourth and Fifth amended consolidated complaints, with the latest action taking place on July 22, 1997. A hearing on the merits of the NLRB's charges took place before an administrative law judge on August 4 through August 8, 1997, and was scheduled

---

**1.** Specifically, the NLRB sought to enjoin Landis from interfering with employees' organizing rights under the National Labor Relations Act (the "Act") and committing unfair labor practices in violation of the Act. Dkt. No. 1, at 12–14. The NLRB also sought an injunction pending final action by the Board in order to restore the status quo for several Landis employees who were discharged or disciplined in alleged viola-

tion of the Act. *Id.* at 14. Finally, the NLRB sought to have the injunction posted at the Landis workplace. *Id.* at 15. The proposed amended petition seeks similar relief.

**2.** Landis made a motion to strike the affidavits of James J. Valenti. Dkt. No. 58.

to resume on August 25 through September 5, 1997. NLRB Mem., Dkt. No. 69, at 5.

On this latest motion, I have received submissions from the NLRB, United Steelworkers, and Landis.[3] Dkt. Nos. 67–70. A great deal of these papers concerns the merits of the underlying Section 10(j) petition rather than the narrow issues before me. At the time of the settlement in December 1996, I had before me the underlying request for a Section 10(j) injunction as well as several discovery-related requests. In their latest submissions, the parties reargued their positions with respect to discovery and the injunction. In the interests of expediency, I will decide the outstanding discovery issues in this order as well as the motion to amend and resume proceedings.

## DISCUSSION

### I. Amendment of petition and resumption of proceedings

Landis argues that I must deny the NLRB's motion to amend the petition and resume the Section 10(j) proceedings because (1) Landis complied with the settlement agreement; (2) the NLRB does not have the power to revoke the settlement agreement; (3) the NLRB waited too long in making its motion; and (4) the NLRB did not show that justice requires an amendment and exhibited bad faith in failing to produce affidavits. In the alternative, Landis argues that it is entitled to discovery and an evidentiary hearing on the above issues. None of the company's arguments has merit.

 The parties agree that federal law creates a liberal standard for permitting amendment of pleadings. Fed. R. Civ. P. 15(a). Whether to permit an amendment is within the court's discretion, and I may not deny leave to amend absent a justifying reason. *Vandewalker v. Quandt's Food Serv. Distrib., Inc.*, 934 F.Supp. 42, 47 (N.D.N.Y. 1996). Justifying reasons include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, undue

prejudice to the opposing party, failure to cure deficiencies by previous amendments and futility. *Id.* Landis argues that undue delay is present here because the NLRB waited six months before seeking to amend its petition to add new unfair labor practice charges and request additional injunctive relief. I disagree. In litigation of any complexity, six months is not a long interval. Based on the submissions, I find that the parties were actively working toward investigation and resolution of their disputes within the context of the NLRB's administrative proceedings. *See, e.g.,* Donner Aff., Dkt. No. 64, ¶ 4 (indicating that NLRB attempted to administratively address the new unfair labor practice charges in April and July 1997). It was not undue delay on the part of the NLRB to pursue its own administrative proceedings before again resorting to the district court.

Landis also argues that bad faith is present here because the NLRB did not produce affidavits in support of its initial petition and its motion to amend and resume proceedings. This argument is frivolous. As discussed more fully below, the NLRB produced extensive affidavits in December 1996 in support of the merits of its initial request for a Section 10(j) petition. *See* Dkt. Nos. 24–57. Moreover, the NLRB submitted an affidavit on August 8, 1997, in support of its motion to amend and resume proceedings. Dkt. No. 64. Contrary to Landis' suggestion, the court did not require any additional support at the time Landis made its August 1997 request.[4] Thus, I find no bad faith.

 Landis next claims that the NLRB lacks authority to unilaterally revoke the settlement agreement and that I am limited to the terms of the agreement when I decide the NLRB's motion. I note initially that the settlement agreement itself is not in the record. The motion I granted in December 1996 holding this action in abeyance merely refers to the parties' settlement agreement, which is a common practice in this district

---

3. Landis submitted a letter surreply without the court's permission on August 22, 1997. Dkt. No. 70. Nonetheless, I will consider it.

4. The NLRB also submitted evidentiary affidavits on August 20, 1997. Dkt. No. 69. I will discuss these materials in the discovery portion of my decision.

court. Dkt. No. 61. The NLRB argues that its regulations permit it to unilaterally revoke informal settlement agreements. 29 C.F.R. § 101.9(e)(2) (1996).[5] Landis responds that this rule applies only to agency proceedings and not to settlements in federal court. However, the language of the abeyance order I signed clearly shows that the settlement agreement itself was part of the underlying NLRB proceedings because the order states that "the parties reached an agreement settling the underlying charges before the National Labor Relations Board." Dkt. No. 61. Thus, Section 101.9 provides the NLRB with full authority to revoke the settlement agreement and seek to resume its Section 10(j) proceedings in federal court.

 Finally, Landis claims that I must deny the NLRB's motion and dismiss the underlying Section 10(j) petition because the company fully complied with the settlement agreement requiring the company to take affirmative steps such as post notices and also to refrain from engaging in additional unfair labor practices. Landis also contends that the NLRB failed to support its motion because the agency did not submit evidence to show that justice requires an amendment to its petition. I reject both of these arguments as an attempt to adjudicate the merits of the parties' underlying dispute. The NLRB affidavit in support of the order to show cause is sufficient to support the motion. Dkt. No. 64. In that affidavit, Acting Regional Director Charles J. Donner details the new unfair labor practices with which the agency has charged Landis in the underlying administrative proceedings. Donner Aff., Dkt. No. 64, ¶¶ 4–5. Although the NLRB also submitted evidentiary affidavits from affected individuals, this additional evidence is unnecessary to support the liberal amendment standard. A party need not prove the merits of its allegations at the time it merely seeks permission to amend its pleadings to add the new material. Consequently, I grant the NLRB's motion pursuant to Fed.R.Civ.P. 15(a) to amend its Section 10(j) petition and its motion to resume proceedings in federal court. I deny the request of Landis for discovery and an evidentiary hearing on this motion, which is a matter of the court's discretion. Based on the record as a whole and my familiarity with the prior proceedings, I am satisfied that justice requires both the amendment and that NLRB has an opportunity to prosecute its petition in federal court.

## II. Outstanding discovery motions

At the time the parties believed they had reached a settlement in December 1996, two discovery motions were outstanding. In the first, Landis requested fairly complete discovery in advance of any decision on injunctive relief.[6] In November 1996, the NLRB opposed Landis' order to show cause and made its own cross-motion for a discovery protective order. Both parties renewed their discovery requests and disputes in their latest submissions. In the interests of expediency, I will decide these motions now.

### A. Section 10(j) standard

 Although I emphasize that this decision does not concern the underlying merits of the NLRB's request for a Section 10(j) petition, I will discuss the applicable legal standard because it affects the scope of discovery, if any, to which the parties are entitled. Section 10(j) of the Act authorizes the NLRB to petition the district court for appropriate temporary relief or restraining orders after the NLRB has issued a complaint charging that any person has engaged in

---

5. The regulation states that "[i]n the event the respondent fails to comply with the terms of an informal settlement agreement, the Regional Director may set the agreement aside and institute further proceedings." 29 C.F.R. § 101.9(e)(2).

6. In discovery papers attached to its November 14, 1996, order to show cause, Landis sought documents that the NLRB conceivably could possess regarding this case. Dkt. No. 7, Ex. A. Landis also sought extensive document production regarding 22 cases that are unrelated to Landis. In addition, Landis sought to depose 12 witnesses, one of whom was the Regional Director of the NLRB herself. In its latest submission, Landis seeks nearly identical discovery. Landis Mem., Dkt. No. 67, at 20–22. In addition, the company seeks to discover union authorization cards that Landis employees signed and records of union meetings regarding the organization of Landis. *Id.* at 21. Landis estimates that it requires an evidentiary hearing consuming three to five days in court. *Id.* at 20.

unfair labor practices. 29 U.S.C. § 160(j). The standard for granting a Section 10(j) injunction is well settled. The relevant issues are "whether there is reasonable cause to believe that the unfair labor practices complained of have been committed and, if so, whether the relief sought is just and proper." *Kaynard v. MMIC, Inc.*, 734 F.2d 950, 953 (2d Cir.1984) (citing *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051 (2d Cir.1980)).

 The reasonable cause determination is extremely deferential to the NLRB. The NLRB "is not required to show that an unfair labor practice occurred, or that the precedents governing the case are in perfect harmony, but only that there is 'reasonable cause to believe that a Board decision finding an unfair labor practice will be enforced by a Court of Appeals.'" *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1033 (2d Cir.1980) (quoting *McLeod v. Business Machine and Office Appliance Mechanics Conference Bd.*, 300 F.2d 237, 242 n. 17 (2d Cir.1962)). Where there are disputed issues of fact, the NLRB is entitled to the benefit of the doubt. *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 36–37 (2d Cir.1975). The NLRB's "version of the facts should be sustained if within the range of rationality, [and] inferences from the facts should be drawn in favor of the charging party." *Mego Corp.*, 633 F.2d at 1031. On questions of law, the district court must sustain the NLRB's position unless the court is convinced that the position is wrong. *Palby Lingerie*, 625 F.2d at 1051.

 The determination that injunctive relief is just and proper lies more squarely within the discretion of the court. The district court must act "in accordance with the general rules of equity" and grant injunctive relief upon a showing of necessity to preserve the status quo or prevent irreparable harm. *Mego Corp.*, 633 F.2d at 1033. As with many forms of injunctive relief, an injunction pursuant to Section 10(j) "[is] intended as a means of preserving or restoring the status quo as it existed before the onset of unfair labor practices." *Seeler*, 517 F.2d at 38. *See also Silverman v. Major League Baseball Player Relations Comm., Inc.*, 880 F.Supp. 246, 253 (S.D.N.Y.), *aff'd*, 67 F.3d 1054 (2d Cir.1995) (holding that Section 10(j) "reflects Congress's recognition that, absent injunctive relief, the Board's often lengthy administrative proceedings could allow an unfair labor practice to go unchecked and thereby render a final Board order ineffectual"). A Section 10(j) injunction is unique, however, because "the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in these cases." *Seeler*, 517 F.2d at 40 (quotation omitted).

 Landis contends that I must apply the traditional standard for injunctive relief during the course of my determination under the "just and proper" prong of the Section 10(j) test.[7] Landis Mem., Dkt. No. 67, at 14–15. I disagree. No Second Circuit authority imposes this requirement. Rather, the cases discuss "general equitable principles." *See, e.g., Silverman v. 40–41 Realty Assocs., Inc.*, 668 F.2d 678, 680 (2d Cir.1982). The district court case upon which Landis relies merely states in dicta the general standard for injunctive relief in a footnote discussing the distinction between mandatory and prohibitory injunctions. *Major League*, 880 F.Supp. at 255 n. 6. Thus, based on Second Circuit case law, there are four circumstances under which a Section 10(j) injunction is just and proper: (1) to prevent irreparable injury to the party injured by the unfair labor practice; (2) to restore or preserve the status quo as it existed prior to the unfair labor practice; (3) to protect the ability of the NLRB to issue a final remedy; and (4) to protect the public interest in the collective bargaining process. *Id.* at 255 (citations omitted). The irreparable injury consideration overlaps with that of traditional preliminary injunction analysis. However, I need not look at the likelihood of success of the underlying NLRB action. Indeed, to do so

---

7. The familiar standard for injunctive relief requires the movant to show (a) irreparable harm; and (b) either (1) a likelihood of success on the merits of the underlying claim or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting injunctive relief. *Jackson Dairy v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

would be counteractive to the first prong of the Section 10(j) analysis, which only requires reasonable cause to believe that the NLRB's case is legitimate.

With the appropriate standard in mind, I next turn to the evidence required to make a meaningful decision within that framework.

### B. Discovery

 Three different avenues exist with respect to discovery. First, I could decide the Section 10(j) injunction request based on affidavits. Second, I could determine that limited depositions were required and base my decision on those additional transcripts. Third, I could decide that a full evidentiary hearing with attendant discovery is warranted before resolving the NLRB's request for an injunction. Landis prefers the third option, while the NLRB prefers the first.

Based on my review of the record, I find that the affidavit evidence in the record, as supplemented pursuant to my direction below, will be sufficient. The timing of the NLRB's petition and order to show cause in relation to the underlying administrative proceedings presents a unique circumstance. In nearly all of cases within the Second Circuit of which I am aware, the district court made its Section 10(j) determination with the benefit of a record that had been completely developed before an administrative law judge ("ALJ") of the NLRB. See, e.g., Ahearn v. House of the Good Samaritan, 884 F.Supp. 654, 658 (N.D.N.Y.1995). There is no administrative record in this case because the proceedings before the ALJ are ongoing. As discussed above, however, the NLRB need not prove the merits of its unfair labor practice allegations in order to be entitled to injunctive relief. In many cases in which an administrative record was available, the district court relied on that record rather than specially prepared affidavits or depositions. Palby Lingerie, 625 F.2d at 1050; Ahearn, 884 F.Supp. at 658. Thus, my decision to rely on affidavit evidence is consistent with the case law, and no Second Circuit case that I have discovered prohibits me from making a determination on affidavits. Because the parties already have submitted extensive affi-

davit evidence, this is not a case like *Silverman v. Red & Tan Charters, Inc.,* 1993 WL 404146 (S.D.N.Y.1993). In that case, the district court granted a Section 10(j) injunction based on the barely sufficient single affidavit of the NLRB's regional director, who merely attested to the veracity of the facts in the underlying petition. *Id.* at \*2. The affidavit evidence in this case already stands in stark contrast to that single affidavit.

By the same token, in many cases, the relevant injunctive relief included the more intrusive step of ordering an employer to bargain with a particular union. *See, e.g., MMIC,* 734 F.2d at 953–54; *Palby Lingerie,* 625 F.2d at 1054. In contrast, the NLRB's requested relief here is a court order that (1) Landis obey the law and not engage in specific unfair labor practices; and (2) Landis temporarily restore discharged workers to employment, provide two interim promotions and expunge disciplinary points from the records of workers until the hearings take place. Section 10(j) injunctions regularly order reinstatement. *See Silverman v. Imperia Foods, Inc.,* 646 F.Supp. 393, 400 (S.D.N.Y.1986). Although any injunctive relief is extraordinary, the injunction that the NLRB requests, if granted, would not be especially burdensome. Thus, additional discovery is not warranted.

 Because of the extreme deference to which the NLRB is entitled on the "reasonable cause" prong of the Section 10(j) test, I need not conduct a formal evidentiary hearing. *See Gottfried v. Frankel,* 818 F.2d 485, 493 (6th Cir.1987). The injunction proceedings in federal court must not evolve into a hearing on the merits of the unfair labor practice charges because the district court must not usurp the NLRB's role. *Imperia Foods,* 646 F.Supp. at 398 (holding that the reasonable cause standard "does not require the Board to adduce evidence to the extent required in a full hearing on the merits"). Moreover, even though the "just and proper" prong lies more fully within the court's discretion, it is not an avenue by which I can decide the merits of the underlying unfair labor practice charges.[8]

---

8. For this reason, Landis' attempt to raise issues of credibility and to otherwise compare affidavits

Consequently, I deny Landis' motion to compel discovery and for expedited discovery. I also deny Landis' demand for an accounting of all affidavits in the possession of the NLRB. Dkt. No. 70. The affidavit evidence in the record will be sufficient both to protect Landis' interests and to make my decision. As a final note, I deny Landis' motion to strike the affidavits of James Valenti. Dkt. No. 58. Landis claims that these affidavits are based on hearsay, but much of that problem may be remedied by the NLRB's submission of affidavits. Rather than make a wholesale rejection of the Valenti affidavits, at the time I decide the underlying request for a Section 10(j) injunction, I will detail the evidence upon which the court relied. I of course will exclude inadmissible hearsay evidence from my consideration.

## CONCLUSION

For the foregoing reasons, the NLRB's motion to amend its petition and resume proceedings is GRANTED. I direct the NLRB to file its amended petition with the court. The request of Landis for expedited discovery is DENIED. In addition, the outstanding request of the NLRB for a discovery protective order is GRANTED consistent with this opinion.

With respect to the underlying merits of the petition, I establish the following summary and schedule:

1. The NLRB is directed to submit evidentiary affidavits relating only to matters newly added to its petition by September 15, 1997. Landis is permitted to submit evidentiary affidavits directly responsive to affidavits that the NLRB has filed by September 19, 1997. These evidentiary submissions shall contain information directly relevant to the Section 10(j) standard for injunctive relief. I especially direct the parties to the four specific areas they may explore under the "just and proper" prong of the injunction analysis. *See, supra,* at 175–176.

2. The court will **NOT** accept additional legal memoranda. I will direct the submis-

sion of additional legal arguments if necessary.

3. I do not expect to entertain additional oral argument on the NLRB's request for injunctive relief pursuant to Section 10(j).

4. By written order, I will decide the only motion that remains pending in this matter, that is, the NLRB's request for a temporary injunction.

IT IS SO ORDERED.

---

with various witnesses' testimony before the ALJ is improper exploration of the merits of the underlying proceedings. *See* Dkt. No. 70.