**Thomas W. SEELER, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**H. G. PAGE & SONS, INC., Respondent.**

No. 82 Civ. 3149 (KTD).

United States District Court, S. D. New York.

May 27, 1982.

William B. Lubbers, Gen. Counsel, John E. Higgins, Deputy Gen. Counsel, Harold Datz, Associate Gen. Counsel, Washington, D. C., Richard L. Deprospero, Regional Atty., N. L. R. B., Albany Resident Office—Region 3, Buffalo, N. Y., for petitioner; Thomas J. Sheridan, Alfred M. Norek, of counsel.

Jackson, Lewis, Schnitzler & Krupman, White Plains, N. Y., for respondent; Thomas P. Schnitzler, Roger P. Gilson, White Plains, N. Y., of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Thomas W. Seeler, Regional Director of the Third Region of the National Labor Relations Board ("the Board"), petitions this court for an injunction pursuant to Section 10(j) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(j), against H. G. Page & Sons, Inc. ("Page"), a Poughkeepsie, New York retailer of lumber, from engaging in alleged unfair labor practices pending further adjudication by an administrative law judge. The instant petition has its genesis in charges filed on December 1, 1981 and January 14, 1982 by Local 456, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union") with the Board. After investigating the charges made, the Board issued a complaint on December 31, 1981 and an amended complaint in February, 1982. The Board now asserts that it has reasonable cause to believe that Page is interfering with employees' rights under Section 7 of the Act, that Page is discriminating in its hiring practices in order to discourage membership in the union, and that Page is refusing to bargain with a properly elected bargaining agent.

The crux of the alleged unfair labor practices revolve around a union representation election held in January, 1982 and Page's purported efforts to thwart the results of that election. Page's alleged actions included telling employees prior to the election that if the Union won then the company would shut down. Page also allegedly fired a union organizer. On November 16, 1981 the employees conducted a strike to protest Page's actions. On November 24 the strikers offered to return to work. Apparently, it was not until January, 1982, however, that some of the workers were permitted to return to work.

This petition was brought on by order to show cause. Upon presentation by the Board of the order to show cause on May 14, 1982, I refused to sign the order but instead scheduled a hearing for May 21, 1982. At this hearing, counsel for the Board submitted a memorandum of law in support of its position and then orally explained to the court its need for immediate injunctive relief. After consideration of

the arguments made by the Board, I must deny this petition for the reasons that follow.

Section 10(j) of the Act provides in pertinent part:

(j) The Board shall have power upon issuance of a complaint ... charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States ... within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

To issue injunctive relief under this provision, a district court must determine that there is reasonable cause to believe that unfair labor practices have been committed and that the circumstances indicate an injunction would be "just and proper." *See Kaynard v. Palby Lingerie, Inc.,* 625 F.2d 1047 (2d Cir. 1980). The Board has not demonstrated here that the circumstances warrant injunctive relief. The charges against Page were initially filed with the Board on December 1, 1981 and again on January 14, 1982. Yet, this petition for an injunction was not presented to this court until May 14, 1982. In the interim most, if not all, of the striking employees have been offered the opportunity to return to work. Under these circumstances it appears totally unnecessary for this court to intervene on behalf of the Board and the Union. Counsel for the Board at oral argument cited "normal union erosion" that would result if an injunction were not issued against Page's activities. I do not believe this presents the type of situation Congress envisioned when it enacted Section 10(j) to prevent violators of the Act from accomplishing "their unlawful objective" pending adjudication by an administrative law judge. S.Rep.No.105, 80th Cong., 1st Sess., pp. 8, 27 (1947). Although Congress specifically noted that some interim relief may be necessary because of "the relatively slow procedure of the Board hearing," *id.,* this remedy does not apply where the Board itself does not treat the ongoing violations with urgency. It took nearly four months for the Board to request injunctive relief. The hearing before the administrative law judge is tentatively scheduled for June 15, 1982. I do not believe any additional "union erosion" will occur in the next month that the Board has not already deemed permissible by waiting four months to come into federal court. Congress may have enacted 10(j) to compensate for an admittedly slow administrative adjudication process, but it did not intend to countenance undue delay in requesting interim injunctive relief. The Board's inaction in this case is the most compelling evidence against the need for intervention by this court. Thus, pending the administrative hearing and decision, it does not appear that the union will require or deserves injunctive relief.

Counsel for the Board at oral argument insisted that the rule in this Circuit required issuance of an injunction in the form of a bargaining order under Section 10(j) where there is a dispute over a representational election. The principal cases cited by the Board, however, include facts which are not present here.

In *Seeler v. Trading Post, Inc.,* 517 F.2d 33 (2d Cir. 1975), 43 of the 49 warehousemen employed by an Albany, New York grocer signed cards designating a teamsters' local as their bargaining representative. The union then approached the employer to attempt to have the cards counted. The employer refused and the employees went on strike. After nearly three weeks, the employees voted to return to work and to petition the Board for an election. When the strikers returned to work, they were promptly laid off. Only half of the strikers were later rehired. At a subsequent Board election three votes were cast for the union; twenty-five votes were cast against it, and there were nineteen chal-

lenged ballots. The Board subsequently filed a complaint, and a hearing before the administrative law judge was held. While the hearing was in progress, the Board petitioned the district court for an injunction. Based primarily upon the record of the administrative hearing, the district court found reasonable cause to believe that the employer had committed unfair labor practices. The district judge enjoined the employer from engaging further in coercive or discriminatory anti-union conduct but did not order the employer to recognize the Union since the Union had never previously served as bargaining agent and had not necessarily won the contested election. The Second Circuit reversed and remanded, however, holding that a bargaining order may have been warranted. Relying on the Supreme Court's decision in *N. L. R. B. v. Grissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Court of Appeals stated that the employees' authorization cards showed that the Union had a clear majority, at least prior to the employer's engagement in actions to undermine the election. This provided the basis for issuing a bargaining order so as to restore the pre-unfair labor practice status quo.

This decision in *Seeler* was followed by the Second Circuit in *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2d Cir. 1980) where a bargaining order was issued as part of an injunction under Section 10(j) because authorization cards had indicated a majority of employees supported the Union prior to the election.

■ In the case at bar, there is simply no basis for finding that the Union, which has never had a history of collective bargaining with Page and has not been certified by the Board, is supported by a majority of the Union and should be bargained with by management. Unlike the cases discussed above, there is no indication here that authorization cards from employees show that the Union enjoys the support of a majority. The Board has not presented any further reason why the Union should be placed in a better position than existed prior to the contested election. Accordingly, no order requiring bargaining will be issued at this time.

■ Insofar as the Board's petition prays for injunctive relief beyond a bargaining order, for the reasons already stated, there has been no demonstration "that an injunction is necessary to preserve the status quo or to prevent irreparable injury." *McLeod v. General Electric Co.*, 366 F.2d 847, 850 (2d Cir. 1966). At present, the strikers have been recalled to their former positions.[1] If the administrative law judge should find that the employer has committed unfair labor practices then it appears that appropriate relief can be formed at that time without prejudicing the rights of the employees or the Teamsters Local. The Board has waited since November to ask for this injunction; there is no reason why they cannot wait a few more weeks for an administrative law judge's determination before relief is granted.

In sum, the Board has totally failed to show any sound reason for short circuiting the normal processes under the Act which the Board chose to invoke back in December, 1981. There simply is no compelling factual or legal reason alleged which leads me to believe that the extraordinary relief sought should be granted.

This entire case can be viewed as a vote of "no confidence" by the staff of the Board in either the procedures set out in the Act, or in the administrative law judges of the Board, or, perhaps, in the Board itself. If that is the unspoken reason for the institution of this action then relief is clearly unavailable in this court and must be sought elsewhere.

Petition denied.

SO ORDERED.

1. According to the papers submitted by the Board, one striker has not been recalled and others have declined offers to return to work. Board's Memorandum at p. 4.