Richard L. AHEARN, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

The HOUSE OF THE GOOD SAMARITAN d/b/a Samaritan Medical Center and Samaritan Keep Nursing Home, Inc., Respondents.

No. 95–CV–54.

United States District Court, N.D. New York.

May 15, 1995.

N.L.R.B., Region Three, Buffalo, NY (Doren G. Goldstone, of counsel), for petitioner.

Harris, Beach & Wilcox, Rochester, NY (Richard N. Chapman, of counsel), for respondents.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

The House of the Good Samaritan ("Hospital") is a not-for-profit corporation which operates an acute care hospital in Watertown. The Samaritan–Keep Home, Inc. ("Home") is a separately incorporated not-for-profit corporation which runs a nursing home in Watertown (together the "Respondents"). Local 721 of the Service Employees International Union ("Union") represents separate collective bargaining units of technicians and licensed practical nurses employed by the Hospital and the Home. At all times relevant to this proceeding, the Home has not employed members of the technician bargaining unit. The technician bargaining unit at issue in this proceeding consists of the employees of the Radiology Department, Laboratory, Operating Room, and Cardiopulmonary Department of the Hospital.

In this motion, the National Labor Relations Board (NLRB) ("Petitioner") seeks a temporary injunction against the Hospital and the Home while matters pending before the NLRB await final disposition. This action began when the Union filed unfair labor practice charges against the Respondents alleging, inter alia, that the Respondents provided unlawful assistance to employees in the circulation of a petition to decertify the Union, coerced employees into signing the petition, and questioned an employee about his Union sympathies. Respondents argue that the Union's charges are actually an attempt to block a secret ballot election and to prevent employees from exercising their rights guaranteed under the National Labor Relations Act (NLRA).

More specifically, the relevant facts arise from the August 1994 circulation of a petition to decertify the Union. Respondents assert that it was a member of the technician bargaining unit, Carolyn Husted, who circulated the petition and that the Respondents used no coercion to force employees to sign. On August 23, 1994, Husted presented the petition, signed by 62 of the 81 members of the technician bargaining unit, to the Hospital's Human Resources Director, Timothy Ryan. The Respondents then filed an "RM petition" with the Regional Director of the NLRB requesting that he order a secret ballot election to determine the wishes of the bargaining unit members on the subject of union representation. On the same day, Respondents withdrew recognition of the Union and notified the Union that it would honor the collective bargaining agreement until it expired on October 31, 1994, but would not deal with the Union in negotiating the next labor contract.

On August 29, 1994, the Union filed an unfair labor practice charge with the NLRB alleging that the Respondents coerced employees into signing the petition in violation of NLRA § 8(a)(1) and that the Respondents failed to provide information and to bargain collectively in violation of NLRA § 8(a)(5). An investigation was conducted by the NLRB and a complaint was issued on November 14, 1994.

On November 21, 1994, Husted filed a decertification petition with the NLRB, which the NLRB dismissed on December 8, 1994 because of the pending unfair labor charge. An administrative evidentiary hearing was held by the NLRB on January 10 and 11, 1995. The NLRB now seeks a temporary injunction which will remain in place until it has made its decision on the charges. In making this determination, the NLRB asks that the court only consider the record

from the administrative hearing of January 10th and 11th.

## II. DISCUSSION

### A. Standard for Granting an Injunction

■ NLRA § 160(j) allows the NLRB, upon issuance of a complaint charging that a person has engaged in unfair labor practices, to petition the United States district court for appropriate temporary relief or a restraining order. The district court, upon the filing of a petition for such relief, has jurisdiction to grant the NLRB such temporary relief as it deems just and proper. 29 U.S.C. § 160(j). This section allows the NLRB "to seek temporary relief when, in its discretion, [it] determines that unrelieved delay in remedying the unfair labor practices would frustrate the basic purpose of the [NLRA]." *Silverman v. Imperia Foods, Inc.*, 646 F.Supp. 393, 397 (S.D.N.Y.1986). The issue for the district court to determine is: (1) whether there is reasonable cause to believe that the unfair labor practices complained of have been committed in violation of the NLRA; and, if so, (2) whether the injunctive relief sought is just and proper. *Id.; Kaynard v. MMIC, Inc.*, 734 F.2d 950, 953 (2d Cir.1984).

### B. Evidence Which Must Be Presented

■ Both parties agree that the determination of reasonable cause may be made exclusively on the record of the administrative proceeding which took place on January 10th and 11th. This understanding is supported by case law. *See, e.g., Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1050–51 (2d Cir.1980) (in which the court used the record of an NLRB hearing as the basis for determining reasonable cause). Thus, the court relies on the record of the January 10 and 11, 1995 NLRB hearing as the basis for determining reasonable cause.

■ However, the parties disagree as to the evidence which the court must examine in making its decision on whether temporary injunctive relief is just and proper. The Petitioner argued that the decision on injunctive relief may also be made solely on the record from the NLRB hearing. The Re-spondents, on the other hand, asserted that the testimony and evidence from the NLRB hearing does not address the issue of whether injunctive relief is just and proper.

Case law appears to have sided with both parties. In some actions, the court has based its decision entirely on the NLRB administrative record. *See, e.g., Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987) (noting that the court's decision on a section 10(j) does not require an evidentiary hearing). Other courts have allowed the parties to stipulate to a decision based solely on the administrative record, but have noted that although this practice is allowed, it is not ideal because the administrative record tends to offer little evidence relevant to the determination of the need for injunctive relief. *Dunn v. Pilgrim Industries, Inc.*, 624 F.Supp. 987, 992 n. 1 (E.D.Tex.1985). Still others have held evidentiary hearings to decide the issue. *See Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 371 (11th Cir.1992) (in which the court heard live testimony from company employees and union representatives); *Hirsch v. Pick–Mt. Laurel Corp.*, 436 F.Supp. 1342, 1346 (D.N.J.1977) (in which the court held a three-day evidentiary hearing); *Seeler v. H.G. Page & Sons, Inc.*, 540 F.Supp. 77, 78 (S.D.N.Y.1982) (in which the court accepted a memorandum of law and an oral explanation of the need for injunctive relief from the NLRB attorney).

Here, the court chose to follow the middle ground offered by the range of case law just cited, and thus, followed the course taken in *Seeler v. H.G. Page & Sons, Inc., supra*, in which the court accepted a memorandum of law and an oral explanation of the need for injunctive relief from the NLRB attorney. In this case, the court heard testimony from the attorneys at oral argument on January 27, 1995 regarding the appropriateness of injunctive relief and allowed both parties to submit additional briefing within ten days, thus denying Petitioner's request that the motion be decided entirely on the existing administrative record.

In response to this directive, both Petitioner and Respondents submitted additional briefing, and the court now examines this information, along with all other documents

previously submitted, in reaching a decision on this motion.

## C. Merits of the Motion

### 1. Delay in Bringing Charges

■ Respondents assert that the Petitioner should be precluded from obtaining section 10(j) relief because of its delay in instituting these proceedings. Respondents note that the alleged unfair labor practices occurred in mid-August 1994, that the NLRB did not proceed to complaint until November 14, 1994, and two additional months passed before the Regional Director brought the application for preliminary injunctive relief. Thus, they argue that it is obvious that any detrimental effect on the Union can be remedied by the final decision of the Board. In other words, since the Petitioner waited nearly six months to seek the injunction, it could not be truly necessary. "However, the doctrine of laches requires more than a mere showing of delay. That is, it requires a period of inexcusable delay followed by a change in circumstances which would make it inequitable to grant the relief requested." *DeProspero v. House of Good Samaritan,* 474 F.Supp. 552, 557 (N.D.N.Y.1978). Respondents have not made any such showing here, and so, the court does not find that delay by the petitioner is a valid reason to deny injunctive relief.

### 2. Reasonable Cause to Believe NLRA Violated

■ In determining whether there is reasonable cause to believe that the NLRA has been violated, "unless the district court is convinced that the legal position of the Regional Director is wrong ... a finding of reasonable cause must ensue." *Kaynard v. Mego Corp.,* 633 F.2d 1026, 1033 (2d Cir. 1980). In determining reasonable cause, the Regional Director should be given the benefit of the doubt on any disputed issue of fact. *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 37 (2d Cir.1975). In other words, the court should defer to the Regional Director's version of the facts "unless convinced that the [Regional Director's] legal position is wrong." *Imperia Foods, Inc.,* 646 F.Supp. at 398. The district court may not resolve discrepancies in the facts presented or determine the

credibility of witnesses. *Id.; Palby Lingerie, Inc.,* 625 F.2d at 1051–52 n. 5. The court is not to determine whether an unfair labor practice occurred, but rather, its only duty is to determine whether "there is reasonable cause to believe that an [NLRB] decision finding an unfair labor practice will be enforced by the Court of Appeals." *Mego Corp.,* 633 F.2d at 1033; *Imperia Foods, Inc.,* 646 F.Supp. at 397. "The Regional Director's version of the facts should be sustained if within the range of rationality ... inferences from the facts should be drawn in favor of the charging party, and ... even on issues of law, 'the District Court should be hospitable to the views of the General Counsel, however novel.'" *Mego Corp.,* 633 F.2d at 1031, *quoting, Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union, I.L.G.W.U.,* 494 F.2d 1230, 1245 (2d Cir. 1974).

■ Petitioner points to a number of examples which it believes show unfair labor practices by Respondents, including: (1) attempts by the Union to set a date with the Hospital to begin negotiation of a new contract which went unanswered for a number of months until after the decertification process began, and then were denied; (2) the failure of the Hospital to timely respond to the Union's June 27, 1994 letter in which it sought data regarding Union employees; (3) the presence and alleged participation of members of the Hospital management at a meeting in which Ms. Husted attempted to gain support and signatures for the decertification of the Union; (4) the fact that employee Francis Ramie, who was not present at the Husted meeting, was informed by Brad Eaves, Director of the Cardiopulmonary Department, that Husted was looking for him to sign the decertification petition; and (5) Eaves' further cooperation with Husted in agreeing to inform other employees who were not at the meeting of the decertification petition. Petitioner asserts that these examples supply ample reasonable cause to believe that the NLRA has been violated by the Respondents. Respondents disagree stating that Petitioner has failed to establish reasonable cause because there is no showing that the Respondents' alleged actions caused or

had the tendency to cause the employees' dissatisfaction with the Union.

### a. comparative case law

■ Petitioner cites to a number of cases to show that factual scenarios similar to the one in this case have led to a finding of reasonable cause. Respondents point out the differences between the seriousness of the activities in those cases and the situation at hand, and point to other cases which they believe are more factually similar in which unfair labor practices were not found. In assessing these cases, the court keeps in mind that it is not required to find that unfair labor practices took place or that precedents governing the case are in perfect harmony in order to make a determination of reasonable cause. *Imperia Foods, Inc.,* 646 F.Supp. at 397. Thus, after reviewing the cases cited by both Petitioner and Respondents, the court finds that the alleged activities of the hospital management in this case do not exactly match any of the cases cited, but in viewing these cases on a continuum, may be said to fall somewhere between the scenarios presented in the Petitioner's and Respondents' cases.

### b. presence of hospital management at the meeting where the decertification petition was circulated

Testimony at the January 1995 NLRB hearing by several employees, namely Patrick Eckhard, William McLennon, and Christine Fritton placed Brad Eaves, Supervisor of the Cardiopulmonary Unit, at the meeting where Carolyn Husted explained and circulated the petition to decertify the union. A number of union employees signed the decertification petition at this meeting, which took place on "hospital time" during a change of shifts. Eckhard and Fritton also note that Dave Saveur and Fritton herself, both hospital supervisors, were also present at the meeting. According to Eckhard's testimony, Eaves told Husted at the end of the meeting that he would notify other union employees who were not at the meeting that Husted was looking for them. According to the testimony of Francis Ramie, a union employee who did not attend the meeting, Eaves later told him that Husted was looking for him to sign the petition. Ramie testified that Eaves told him that he had given Husted his home telephone number so that she could contact him and repeated a few minutes later that Husted was looking for him to sign the petition. Eaves also told Ramie that he was the only one in the unit who had not yet signed the decertification petition.

### c. failure to provide collective bargaining dates

Jan Marie Brown, a Union representative, testified at the NLRB proceedings as to the difficulty in getting the Hospital management, namely Timothy Ryan, who handles all labor relations for the Hospital, to timely set dates for collective bargaining. According to Brown, she first made a request to set bargaining dates in April 1994 and repeated this request in a letter dated June 27, 1994. Joanne Peffer, Secretary to Timothy Ryan, stated that she took two phone messages from Brown during the summer of 1994. Timothy Ryan testified that he received no calls from Brown before or during May 1994 and did not see the need to respond quickly to the requests to set bargaining dates. However, as of the time that the Hospital refused to recognize the union in late August 1994, it had not yet provided bargaining dates and the contract effective at that time was due to expire on October 31, 1994.

### d. failure to provide information on union members

Brown also testified that she requested that the Hospital provide her with information on the bargaining units due to negotiate new contracts in a letter dated June 27, 1994. The Union allegedly intended to forward this information to the international union for analysis. Respondents did not answer this letter until August 23, 1994 when they informed the Union that they would not negotiate a successor agreement for the technicians unit, and thus, would not provide the requested information. Again in a letter dated September 16, 1994, the Union's attorney Michael Craner, asked the Respondents to furnish the information the Union had requested. This request was denied in a letter dated September 20, 1994 in which Respondents again informed the Union that they

would not provide the information sought regarding the technical unit and would not negotiate a new contract with that unit.

Based on all this information, and in light of the legal standard stated previously and the facts presented by the Regional Director, and after a careful review of the transcripts of the proceedings before the NLRB on January 10 and 11, 1995, the court finds that there is reasonable cause to believe that an NLRB decision finding an unfair labor practice will be enforced by the Court of Appeals. The court is not convinced that the legal conclusions reached by the Regional Director are wrong, and deferring to the statutory construction urged by the Director, *see Imperia Foods, Inc.*, 646 F.Supp. at 398, finds reasonable cause to believe that a violation of the NLRA has taken place. Thus, it finds that reasonable cause exists for the issuance of a temporary injunction.

### 3. Just and Proper Injunctive Relief

Injunctive relief is only proper when a showing of the necessity of preserving the status quo or of preventing irreparable harm has been made. *Mego Corp.*, 633 F.2d at 1033. "Section 10(j) should be applied 'in the public interest and not in vindication of purely private rights' so as to further the policies of the Act." *Trading Port, Inc.*, 517 F.2d at 40. In other words, § 10(j) was made part of the NLRA in order to preserve the status quo pending the completion of the NLRB's procedures and the relief granted must only be that necessary to preserve the ultimate remedial power of the NLRB and not act as a substitute for the Board's exercise of power. *Gottfried*, 818 F.2d at 494. "However, since section 10(j) was intended as a means of preserving or restoring the status quo as it existed before the onset of unfair labor practices, the courts will not grant or withhold injunctive relief to preserve a situation which has come into being as a result of the unfair labor practices being litigated." *House of Good Samaritan*, 474 F.Supp. at 557.

In determining whether an injunction is appropriate under § 10(j), the court must use the same general equitable principles ordinarily applied in determining the propriety of injunctive relief, keeping in mind that injunctions are an extraordinary form of relief. Thus, it must inquire as to whether an injunction is necessary to prevent irreparable harm and to preserve the status quo, while examining the balance of hardships between the parties. *Imperia Foods, Inc.*, 646 F.Supp. at 398; *Mego Corp.*, 633 F.2d at 1033. Additionally, the Second Circuit has required that the public interest, not the requirements of private litigation, be used to measure the appropriateness and necessity of injunctive relief pursuant to § 10(j). *Imperia Foods, Inc.*, 646 F.Supp. at 399.

In this case, the Petitioner seeks temporary injunctive relief which will, *inter alia*, restrain the Respondent, and persons acting in concert with them, from promoting the decertification of the Union, threatening employees regarding Union representation, interrogating employees about their Union sympathies, refusing or failing to provide relevant information requested by the Union, and refusing to recognize and bargain in good faith with the Union. More specifically, the Petitioner asks that the injunction be issued as follows:

A. Enjoining and restraining Respondents, their officers, agents, representatives, servants, employees, attorneys, and individuals and persons acting in concert or participation with them, pending the final disposition of the matters involved herein pending before the Board, from:

(1) Assisting in the promotion, presentation or circulation of petitions or other documents promulgated for the purpose of decertifying the Union;

(2) Threatening employees with discharge or implying that employees could be fired regardless of their Union representation in order to coerce or discourage their support for the Union;

(3) Coercively interrogating employees about their Union sympathies, membership or activities;

(4) Failing or refusing to provide relevant information requested by the Union;

(5) Withdrawing recognition from, or in any other manner failing or refusing to recognize and, upon request, bargain in

good faith with the Union as the exclusive collective-bargaining representative of its Technician Unit employees; and (6) In any like or related manner interfering with, restraining or coercing its employees in the exercise of the rights guaranteed them under Section 7 of the Act.

B. Ordering Respondents, pending final Board adjudication, to:

(1) Recognize and, upon request, bargain in good faith with the Union as the exclusive collective-bargaining representative of its Technician Unit employees at its Watertown, New York facilities concerning their wage, hours and other terms or conditions of employment;

(2) Promptly furnish the Union with all requested information contained in the Union's letters to Respondents dated June 27, 1994, August 18, 1994, and September 16, 1994, with respect to the Technician Unit employees;

(3) Post copies of the District Court's opinion and order at Respondents' Watertown, New York facilities at all locations where notices to employees are customarily posted; said postings shall be maintained during the pendency of the Board's administrative proceedings, free from all obstructions and defacements; and agents of the Board shall be granted reasonable access to Respondents' Watertown, New York facilities to monitor compliance with this posting requirement; and

(4) Within 20 days of the issuance of the District Court's order, file with the Court, a copy submitted to the Regional Director of Region 3 of the Board, a sworn affidavit from a responsible official of the Respondents setting forth with specificity the manner in which the Respondents have complied with the terms of the District Court's order.

### a. irreparable harm

■ Petitioner asserts that it will be irreparably harmed in the absence of injunctive relief. Respondents assert that the Union has represented the technical bargaining unit for 15 years and has negotiated several collective bargaining agreements, and so, the relationship between the employees and the Union will withstand the period of time required to complete the administrative process without an injunction. To the contrary, the evidence submitted here shows that the Union is in a vulnerable position due to the circulation of the decertification petition, the refusal of the Hospital to provide information sought by the Union, and its refusal to bargain collectively with the Union. If the respondents refuse to bargain with the Union and continue to withhold recognition, employee support will continue to erode to the point that any final order by the NLRB might grant would be ineffective. *Asseo v. Centro Medico del Turabo, Inc.*, 133 LRRM 2722, 2729 (BNA), 1989 WL 130007 (D.P.R.1989); *Asseo v. El Mundo Corp.*, 706 F.Supp. 116, 129 (D.P.R.1989). This is especially true in light of the fact that the administrative law judge presiding over the case has recently returned from medical leave which has slowed the decisionmaking process. Thus, the court finds that an injunction is necessary to prevent irreparable harm.

### b. balance of hardships

■ Respondents argue that a number of employees have stopped paying their Union dues, and so, will not be allowed to vote on any collective bargaining agreement reached between the Respondents and the Union. Thus, Respondents argue that the requested injunctive relief could cause the ratification of a labor contract by a minority of the employees. They also argue that the Union may force out of their jobs those who have not paid their dues thus causing irreparable harm to those employees and the public by interfering with the delivery of health care services. They also note that an injunction will cause many employees to be represented by a Union that they do not support. Thus, Respondents argue that the balance of hardships tips against the issuance of injunctive relief.

Petitioner answered these concerns at oral argument on January 27, 1995 where it noted that all employees were allowed to vote on the last contract regardless of whether they were in good standing with the Union and

that the same would occur in voting on any new contract reached. It also asserted that Respondents' argument that an injunction would force a large number of employees who did not want to be represented by the Union to be represented by it is without merit because the involvement of the Respondents in obtaining signatures for the decertification petition was a violation of the NLRA in the first place and thus invalid. Additionally, the court notes that Respondents have only argued that the balance of hardships weighs against granting an injunction due to the effects on certain employees. Respondents, however, do not represent these employees in any manner, and have not presented any evidence that the balance of hardships tips in favor the Hospital. Thus, in examining all the evidence before it, and in light of the irreparable harm just discussed, the court finds that the balance of hardships tips in favor of granting injunctive relief.

### c. public interest

 Neither party has made a strong showing that the public interest will be affected either by the existence or nonexistence of an injunction. Petitioner has not presented any evidence that the absence of an injunction will affect the public interest, and Respondents have only presented speculative evidence that an order requiring them to bargain with the Union may cause harm to the public interest. Respondents assert that those technicians who are not paying Union dues will have to quit to avoid being required to pay further dues, or may be forced out of the Union for nonpayment of dues. Respondents claim that either scenario could interfere with the delivery of health care. These concerns are speculative at best.

However, this does not appear to be fatal to the preliminary injunction motion. Other circuits have interpreted the public interest factor as a showing that "the public interest will not be adversely affected by the granting of the injunction." *See, e.g., Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981). Viewing the public interest factor in this light, and in light of Respondents' mere speculative showing of damage to the public interest, there is no public interest concern which weighs against the issuance of an injunction. Moreover, other courts have noted that there is a public interest in the integrity of the collective bargaining process itself, and so without an injunction the public interest would be harmed in this case by the Respondents' continued failure to bargain for a new contract with the Union. *Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902, 906–07 (3d Cir.1981).

### III. CONCLUSION

In light of the foregoing conclusions, the court finds it appropriate to grant the injunctive relief sought by petitioner. The court grants the injunction in the form requested by the petitioner, which is detailed on pages 13 through 15 of this order.

**IT IS SO ORDERED.**