Sandra DUNBAR, Regional Director of the Third Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CARRIER CORPORATION, Respondent.

No. 99–CV–26.

United States District Court, N.D. New York.

Feb. 5, 1999.

Order Denying Reconsideration Feb. 19, 1999.

Sandra Dunbar, Regional Director, N.L.R.B., Third Region, Buffalo, NY (Michael J. Israel, of counsel), for Petitioner.

Bond, Schoeneck & King, LLP, Syracuse, NY (Louis P. DiLorenzo, of counsel), for Respondent.

Blitman & King, LLP, Syracuse, NY (James R. LaVaute, of counsel), for Sheet Metal Workers, Intern. Ass'n, Local 527, Amicus Curiae.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

### INTRODUCTION

Petitioner Sandra Dunbar, Regional Director of the Third Region of the National Labor Relations Board ("Board"), petitions under section 10(j) of the National Labor Relations Act ("Act"), 29 U.S.C. § 160(j), for an injunction enjoining respondent from refusing to bargain in good faith with Sheet Metal Workers International Association, Local No. 527 ("union") and from taking any action in furtherance of its decision to relocate work from its TR–1 facility in Syracuse, New York to Huntersville, North Carolina, without first bargaining to a good-faith impasse or agreement with the union over the proposed relocation decision and its effects upon unit employees.

This court denied petitioner's application for a temporary restraining order on January 11, 1999.

On January 19, 1999 this Court granted leave to the union to submit a brief in support of the petition as *amicus curiae*.

The Court heard oral argument on the petition on February 2, 1999. An order admitting Michael Israel to appear *pro hac vice* on behalf of the petitioner was granted from the bench at oral argument.

### BACKGROUND

#### I. The Charge

On May 1, 1998 the union filed a "Charge Against Employer" against respondent claiming that respondent "has failed and refused to bargain in good faith with the charging party over the decision to contract out bargaining unit work and the decision to relocate bargaining unit work, from building TR–1." Petitioner subsequently determined that respondent's alleged conduct relative to contracting out bargaining unit work did not constitute an unfair labor practice.

#### II. Complaint

On December 7, 1998 the petitioner filed a complaint and notice of hearing alleging that since March 1, 1998 respondent "has

insisted, as a condition of agreeing not to relocate certain Unit work performed at its TR–1 facility in Syracuse, New York, that the Union agree to the provisions of an addendum to the parties' collective-bargaining agreement *** providing for separate terms and conditions of employment for certain Unit employees in Respondent's TR–1 facility and effectively removing those employees from the Unit." Petitioner further alleges that the relocation of unit work is a mandatory subject for purposes of collective bargaining, that the addendum is not a mandatory subject for purposes of collective bargaining, and that on May 11, 1998, respondent bargained to impasse. The complaint avers that on the same date, respondent decided to relocate the work performed by certain unit employees in the TR–1 facility to a new facility located in Huntersville, North Carolina, notwithstanding that it had failed to reach a bona fide impasse in bargaining about the relocation decision. The complaint further states that beginning on or about October 11, 1998, respondent began to implement its decision to relocate the work performed by certain unit employees in the TR–1 facility "by, but not limited to, acquiring real property and a building in North Carolina, as well as making future plans to complete its implementation of its relocation decision by August 15, 1999." Petitioner concludes that by the alleged conduct, respondent has been failing and refusing to bargain collectively with the exclusive collective-bargaining representative of its employees, in violation of Section 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1), (5).

The complaint seeks an injunction ordering respondent to "cease and desist from relocating Unit work from its TR–1 facility located in Syracuse, New York, and to restore all Unit work which it has already removed, or will remove in the future, back to its TR–1 facility located in Syracuse, New York as it existed on May 11, 1998." The complaint further seeks an order requiring respondent to provide certain documents on request.

### III. Petition

The petition sets forth the same allegations as are contained in the complaint. It states that petitioner has reasonable cause to believe that respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of section 8(a)(1) and (5) of the Act and that the unfair labor practices affect commerce within the meaning of section 2(6) and (7) of the Act, 29 U.S.C. § 152(6), (7). It further states that it may be fairly anticipated that, unless enjoined, respondent will continue to engage in such conduct with the result that employees will continue to be deprived of their fundamental right to be represented for purposes of collective bargaining as provided for in the Act.

Petitioner seeks an order enjoining respondent from failing or refusing to bargain in good faith with the union regarding its decision to relocate work from the TR–1 facility in Syracuse to Huntersville, North Carolina, including restricting bargaining to, and insisting to impasse upon, the adoption of respondent's proposal to alter the scope of the existing collective-bargaining unit. It further seeks an order enjoining respondent from taking any action including construction or preparation of, or procurement or installation of equipment for, its facility in Huntersville, North Carolina, or removing or relocating any fixtures, machinery, equipment, inventory, raw materials, or work/production orders, or laying off or terminating any unit employees at its TR–1 facility on its Syracuse, New York campus, in furtherance of its decision to relocate work to Huntersville, North Carolina without first bargaining to a good-faith impasse or agreement with the union over the proposed relocation decision and its effects upon unit employees. Petitioner requests that the Court issue an affirmative order directing respondent to bargain in good faith with the union con-

cerning their wages, hours and other terms and conditions of employment, including the decision to relocate, and the effects of such decision upon unit employees, to withdraw from bargaining its current proposals that would alter the scope of the parties' established collective-bargaining unit in Syracuse, New York, and to post copies of the District Court's opinion and order at the facilities where notices to employees are customarily posted.

## APPLICABLE LAW

Section 10(j) of National Labor Relations Act, 29 U.S.C. § 160(j), provides that upon issuance of a complaint charging that a person has engaged in or is engaging in an unfair labor practice, the Board has the power to petition a District Court for appropriate temporary relief or restraining order.

In considering such a petition, the Court is required to determine whether there is reasonable cause to believe that an unfair labor practice has been committed and, if so, whether the requested relief is just and proper. *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1033 (2d Cir.1980). With respect to whether there is reasonable cause to believe that an unfair labor practice has been committed, petitioner "is not required to show that an unfair labor practice occurred or that the precedents governing the case are in perfect harmony, but only that there is 'reasonable cause to believe that a Board decision finding an unfair labor practice will be enforced by a Court of Appeals.'" *Id.* at 1033, quoting *McLeod v. Business Machine and Office Appliance Mechanics Conference Board*, 300 F.2d 237, 242, n. 17 (2d Cir.1962). The reasonable cause requirement is satisfied where the Board has come forward with evidence "sufficient to spell out a likelihood of violation." *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union*, 494 F.2d 1230, 1243 (2d Cir.1974). In reviewing the facts, the court need not resolve conflicting evidence if facts exist which could support the Board's theory. The Board's version of the facts "should be given the benefit of the doubt." *Seeler v. The Trading Port*, 517 F.2d 33, 37 (2d Cir.1975). Regarding the law, unless the court is convinced that the legal position of the Board is wrong, a finding of reasonable cause must ensue. *Kaynard* at 1033.

Injunctive relief under section 10(j) is "just and proper" where serious and pervasive unfair labor practices threaten to render the board's process totally ineffective by precluding a meaningful final remedy or where interim relief is the only effective means to preserve or restore the *status quo* as it existed before the onset of the violations. *Kaynard* at 1034; *Seeler* at 38. In reviewing an application for injunctive relief the court must consider general equitable criteria such as whether irreparable injury may result in the absence of an injunction, *Kaynard* at 1033, and whether a balancing of the hardships supports an injunction. *Ahearn v. House of the Good Samaritan*, 884 F.Supp. 654, 661 (N.D.N.Y.1995).

## REASONABLE CAUSE

At all material times respondent has been engaged in producing air conditioning products in Syracuse, New York.[1] At all material times, the union has been the designated exclusive collective-bargaining representative of certain employees at respondent's four Syracuse, New York plants (known as TR–1, TR–2, TR–3 and TR–20) for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment, and other terms and conditions of employment.[2]

---

1. Respondent in conducting its business operations purchases and receives at its Syracuse, New York facility, goods and materials valued in excess of $50,000 directly from points located outside the State of New York, and has been engaged in commerce within the meaning of section 2(2), (6) and (7) of the Act.

2. The union is an unincorporated association in which employees participate and which

The union has been recognized by respondent as the unit representative. The current collective-bargaining agreement is in effect from November 3, 1997 until November 5, 2000. One of the covered plants, known as TR–1, produces large rotary chillers for commercial air conditioning applications. It is undisputed that respondent has begun relocation of the TR–1 facility to Huntersville, North Carolina.

Petitioner's determination here that relocation is a mandatory subject of collective bargaining is supported by case law, *United Food and Commercial Workers Intern. Union , AFL-CIO v. N.L.R.B.*, 1 F.3d 24 (D.C.Cir.1993), *cert. dismissed*, 511 U.S. 1138, 114 S.Ct. 2157, 128 L.Ed.2d 882 (1994), and by the collective bargaining agreement between respondent and the union. Implicit in this determination is the finding that the union did not waive its right to bargain the issue of relocation. This finding is supported by the "Management Responsibility" clause, Article V, section 1, of the collective bargaining agreement, which recognizes "the responsibility of management to conduct the business of the Company in the balanced interest of employees, stockholders, customers and the general public," and gives the Company the responsibility, without interference, restriction, or recourse to grievance procedures, to determine "the number of plants and their locations."

Waiver of statutorily protected rights is disfavored by national labor policy. *Olivetti Office U.S.A. v. N.L.R.B.*, 926 F.2d 181, 187 (2d Cir.1991), *cert. denied*, 502 U.S. 856, 112 S.Ct. 168, 116 L.Ed.2d 132 (1991). Only a "clear and unmistakable" waiver will be recognized by the Courts. *Id.* at 187.[3] Given the board's expertise in labor matters, its decision on the question of waiver is accorded significant deference and will not be overturned if supported by substantial evidence. *N.L.R.B. v. New York Telephone Co.*, 930 F.2d 1009, 1011 (2d Cir.1991). In addition to the agreement itself, courts consider other factors, including the past practices and bargaining history of the parties, in determining whether a waiver has occurred. *N.L.R.B. v. United Technologies Corp.*, 884 F.2d 1569, 1575 (2d Cir.1989).

Here, the petitioner's position that the union did not waive relocation as a mandatory subject of collective bargaining is supported by the parties' agreement and by the affidavit of Robert E. Demmerle, union representative, to the effect that the union has never intended to waive its right to bargain the issue of relocation. Thus, facts

---

exists for the purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or other conditions of employment and is a labor organization within the meaning of section 2(5) of the Act.

The following employees of respondent constitute a unit appropriate for the purposes of collective bargaining within the meaning of section 9(b) of the Act: All production and maintenance employees at the respondent's existing Syracuse, New York plants, including truck drivers, group leaders and leadpersons, but excluding timekeepers, time study employees, nurses, draftspersons, research workers, cafeteria employees, all other clerical and salaried employees, guards and supervisors as defined in the National Labor Relations Act of 1947, as amended, and as certified by the National Labor Relations Board in Case 3–RC–2541.

**3.** Carrier argues that the correct analysis is not a waiver analysis but rather contract interpretation, i.e., whether the union exercised its right to bargain about a particular subject by negotiating for a provision in a collective bargaining contract that fixes the parties' rights and forecloses further mandatory bargaining as to that subject. See *NLRB v. U.S. Postal Serv.*, 8 F.3d 832 (D.C.Cir.1993). This approach has not been adopted by the Second Circuit. See *Olivetti Office U.S.A. v. N.L.R.B.*, 926 F.2d 181 (2d Cir.1991), *cert. denied*, 502 U.S. 856, 112 S.Ct. 168, 116 L.Ed.2d 132 (1991); *N.L.R.B. v. United Technologies Corp.*, 884 F.2d 1569 (2d Cir.1989); Wagner, *"No" Means "No" When a Party "Really" Says So: The NLRB's Continued Adherence to the Clear and Unmistakable Waiver Doctrine in Unilateral Change Cases*, 13 Labor Lawyer 325, 328, n. 14.

exist which support petitioner's position on this issue.

■ Petitioner has determined that in its totality the proposed addendum to the collective bargaining agreement alters the scope of the bargaining unit by effectively removing the TR–1 workers from the multi-plant bargaining unit. *Reichhold Chemicals, Inc. v. N.L.R.B.*, 953 F.2d 594 (11th Cir.1992). Support for this determination is found in a plain reading of the addendum, which eliminates "bumping" and "bidding" between TR–1 and the other facilities covered by the collective bargaining agreement, prohibits workers' participation in a strike at TR–1 or any other facility covered by the agreement, and, unlike the collective bargaining agreement, which expires November 5, 2000, expires December 5, 2004.

■ It is well established that the scope of a bargaining unit is a permissive subject of collective bargaining, *Hill–Rom Co., Inc. v. N.L.R.B.*, 957 F.2d 454, 457 (7th Cir.1992), and that a party to a collective bargaining agreement cannot insist to the point of impasse upon a permissive proposal such that acceptance of the permissive proposal becomes a condition precedent to agreement on a mandatory issue. *Spentonbush/Red Star Companies v. N.L.R.B.*, 106 F.3d 484 (2d Cir.1997).

■ There is evidence in the record supporting petitioner's factual determination that respondent insisted to the point of impasse on the addendum such that acceptance of the addendum became a condition precedent to agreement on the mandatory issue of relocation. This evidence is found primarily in the affidavit of George A. Gratton, Business Manager for the union during the relevant times, and the correspondence attached thereto. Gratton avers that the document known as the addendum was presented by Charles V. Gagliardi, a representative of respondent, at a meeting on April 1, 1998 between union and company representatives. According to Gratton, Gagliardi indicated

that if the union did not agree to the addendum respondent would relocate TR–1 and stated that there "would not be much movement on [respondent's] part per this document." In letters to the union on April 13, 1998 and April 23, 1998 Gagliardi said respondent would invest in the TR–1 factory here in Syracuse "if the union is willing to agree to the addendum." According to Gratton, at a meeting between representatives of respondent and the union on April 27, 1998 Gagliardi stated that the relocation issue would be resolved in favor of TR–1 in Syracuse only if the union agreed to the addendum and gave the ultimatum to the union that if it would not change its position relative to the addendum, that meeting (of April 27, 1998) would be the final meeting concerning the relocation issue. On May 1, 1998 the union filed its unfair labor practice charge with petitioner.

This evidence is sufficient to establish that petitioner has reasonable cause to conclude that respondent has violated the Act.

## JUST AND PROPER

Having determined that petitioner has reasonable cause to conclude that respondent has violated sections 8(a)(1) and (5) of the Act, the Court turns to the question of whether the relief requested is just and proper. For the purpose of deciding what relief is just and proper the Court makes the following findings of fact.

The union filed the unfair labor practice charge herein on May 1, 1998. A copy was mailed to respondent on the same day. On June 23, 1998, respondent submitted a 23–page position statement to petitioner addressing the May 1, 1998 charge and other matters. On or about July 20, 1998 a representative of petitioner informed respondent that all allegations of the charge were being dismissed except one, and that petitioner was sending the following certified question to the National Labor Relations Board Division of Advice in Washington, D.C.: "Whether an em-

ployer in Carrier's situation can precondition bargaining over whether to continue to operate an existing plant upon acceptance of an agreement that effectively carves employees out of the bargaining unit and then bargain to impasse over a relocation decision?" On November 16, 1998 respondent was informed that petitioner had been instructed to issue a complaint.

In October 1998 respondent purchased a former distribution center near Huntersville, North Carolina for $9.5 million. As a result of modifications already performed, it is unlikely that the facility could be sold for the amount respondent paid for it. As of January 19, 1999, 32 employees are actively employed by respondent in Huntersville, including 23 who have quit other jobs to accept the positions offered to them by respondent and several of whom were Carrier employees who have relocated or are relocating to Huntersville from Syracuse. Respondent has spent or committed more than $500,000 in employee relocation expenses. Respondent is in the process of screening, interviewing, hiring and training other applicants for employment.

Respondent has entered several contracts with suppliers for components and parts to be supplied to the Huntersville facility. It has not yet removed from the Syracuse plant any necessary equipment. Respondent has already contracted for the purchase of a substantial amount of new equipment and services for use at the Huntersville plant, valued at approximately $15,519,000. Carrier projects that it will lose approximately $1.125 million dollars per month until the Huntersville plant is in operation.

The union anticipates that since the announced relocation of TR-1 work to North Carolina, approximately 70 bargaining unit employees will take early retirement from Carrier by March 1, 1999.

As stated, injunctive relief under section 10(j) is proper where serious and pervasive unfair labor practices threaten to render the board's process totally ineffective by precluding a meaningful final remedy; where interim relief is the only effective means to preserve or restore the *status quo* as it existed before the violations; and where the passage of time might otherwise allow the respondent to accomplish its unlawful objective before being placed under legal restraint. *Kaynard v. Mego Corp.,* 633 F.2d 1026, 1034 (2d Cir.1980); *Seeler v. The Trading Port,* 517 F.2d 33, 38 (2d Cir.1975).

As discussed above, there is ample evidence supporting petitioner's position that respondent wrongfully insisted to impasse on the addendum, a nonmandatory proposal, such that the addendum became a condition precedent to any agreement on relocation, a mandatory issue. Thus, there is evidence that respondent did not bargain in good faith regarding the relocation decision. If petitioner ultimately determines that respondent improperly commenced relocating TR-1 work without first bargaining to a bona fide impasse, petitioner will then have the responsibility to fashion a remedy tailored to cure that wrong. One such remedy could well be restoral of the *status quo ante* by restoral of the TR-1 operations in Syracuse. See, generally, *Hirsch v. Dorsey Trailers, Inc.,* 147 F.3d 243 (3d Cir.1998); *Wilson v. Liberty Homes, Inc.,* 500 F.Supp. 1120 (W.D.Wis. 1980), *vacated in part and remanded,* 673 F.2d 1333 (7th Cir.1981); *Frye for and on Behalf of N.L.R.B. v. Seminole Intermodal Transport, Inc.,* 141 L.R.R.M. 2265 (S.D.Ohio 1992); *see also Olivetti Office U.S.A. v. N.L.R.B.,* 926 F.2d 181, 189 (2d Cir.1991), *cert. denied,* 502 U.S. 856, 112 S.Ct. 168, 116 L.Ed.2d 132 (1991).

Failure to grant interim relief of the type requested by petitioner would be likely to prevent petitioner from effectively exercising its ultimate remedial powers. At this point, TR-1 in Syracuse is still operational. Absent injunctive relief, given respondent's stated intention of commencing production in Huntersville on May 11, 1999 and achieving full production

there by August 15, 1999, there will be a rapid progression of equipment removal and employee transfers and layoffs, including early retirement of a significant number of bargaining unit employees.[4] Once the relocation is complete and the Syracuse plant closed, restoral of the *status quo* as it existed before the violations will be impossible. Not only will the cost of restoral of the facilities be prohibitive, see, e.g., *Calatrelló v. Automatic Sprinkler Corp. of America*, 55 F.3d 208 (6th Cir. 1995), but many unit employees will be scattered and the union bargaining power weakened with respect to TR–1. The Court recognizes that injunctive relief of the kind requested here is a drastic measure and is appropriate only where necessary to prevent irreparable harm. Based on the facts before the Court, including the magnitude of the preparations for the Huntersville plant and the increasing obstacles to returning to the pre-violation *status quo*, and the fact that respondent took these steps with full knowledge of the union's charge of unfair labor practices and the probability of an N.L.R.B. proceeding, the Court concludes that injunctive relief is necessary to preserve the operability of TR–1 in Syracuse, to protect petitioner's remedial powers, and to prevent irreparable harm.

 Respondent argues that it has been prejudiced by petitioner's delay. Delay alone is not a determinative factor in whether 10(j) relief is just and proper. Delay may be significant, however, where it leads to a change in circumstances which affects the appropriateness of the relief requested. *See generally N.L.R.B. v. Quinn Restaurant Corp.*, 14 F.3d 811, 816 (2d Cir.1994). Here, the closure of TR–1 has not yet occurred and interim relief should preserve the *status quo*. Moreover, it would not be appropriate to punish the employees for any delay by petitioner. *Id.* Most importantly, it is undisputed that respondent knew of the union's charges and Board's investigation, yet proceeded with the relocation. Here the claimed prejudice is of respondent's own making, *Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243, 248 (3d Cir.1998), and will have resulted from a calculated risk undertaken by respondent. The Court observes also that respondent's evidence of the costs it has incurred in preparation for the Huntersville operation and its losses associated with the TR–1 facility in Syracuse does not include evidence of respondent's overall financial situation so as to enable the Court to consider the burden of these costs in the context of respondent's entire operation. Under all of the circumstances, including the absence of any basis whereby the public interest would be adversely affected if an injunction is ordered, see *Ahearn v. House of the Good Samaritan*, 884 F.Supp. 654, 663 (N.D.N.Y.1995), the Court finds that an injunction is just and proper.

The Court declines to direct respondent to withdraw from bargaining all its current proposals that would alter the scope of the parties' established collective-bargaining campus unit in Syracuse, New York; it is not improper to propose permissive subjects, even repeatedly; it is only improper

---

4. According to an affidavit of Charles V. Gagliardi, respondent's Director of Employee and Industrial Relations, there are no projected employee layoffs until July, 1999. He states that as a result of early retirement incentives and normal attrition, between 40 and 70 bargaining unit employees on the payroll as of January 1, 1999 will be laid off. He also avers that of the unit employees on the payroll as of May 13, 1998 when Carrier announced its decision to relocate TR–1, no one will be laid off.

Bruce A. Evans, business manager of the union, states in an affidavit that since respondent announced its relocation of TR–1 work to North Carolina, approximately 70 bargaining unit employees in TR–1 will take early retirement through March 1, 1999.

According to petitioner, before the events in issue, about 450 unit employees worked in TR–1. Herbert A. Cooley, respondent's Manager of Syracuse Industrial Relations states that approximately 100 TR–1 positions were eliminated as of January 4, 1999 as a result of the decisions to subcontract certain work and discontinue certain products, which are not in issue here.

to insist upon them to impasse such that acceptance of the permissive proposal becomes a condition precedent to an agreement on mandatory subjects. *Spentonbush/Red Star Companies v. N.L.R.B.*, 106 F.3d 484, 493 (2d Cir.1997).

Having considered the parties' submissions and the applicable law, it is hereby

ORDERED that pending the final disposition of the matters before the National Labor Relations Board, the Petition for an Injunction under Section 10(j) of the National Labor Relations Act is GRANTED to the extent set forth herein and otherwise denied; it is further

ORDERED that pending final Board adjudication, Respondent, its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, are hereby enjoined and restrained from:

(A) Failing or refusing to bargain in good faith with the union regarding its decision to relocate unit work from the TR–1 facility in Syracuse, New York to Huntersville, North Carolina, by, including but not limited to, restricting bargaining to, and insisting to impasse upon, the adoption of Respondent's proposal to alter the scope of the existing collective-bargaining unit by separating TR–1 employees from the established multi-plant Syracuse, New York campus Unit;

(B) Taking any action, including construction or preparation of, or procurement or installation of equipment for, its facility in Huntersville, North Carolina, or removing or relocating any fixtures, machinery, equipment, inventory, raw materials, or work/production orders, or laying off or terminating any unit employees at its TR–1 facility on its Syracuse, New York campus to Huntersville, North Carolina, without first bargaining to a good-faith impasse or agreement with the union over the proposed relocation decision and its effects upon unit employees; and

(C) In any like or related manner interfering with, restraining or coercing its employees in the exercise of the rights guaranteed them under Section 7 of the Act; and it is further

ORDERED that Respondent:

(A) Upon request, bargain in good faith with the union as the exclusive collective-bargaining representative of the unit employees at its Syracuse, New York campus concerning their wages, hours and other terms and conditions of employment, including the decision to relocate unit work from its TR–1 Syracuse, New York campus facility to a facility in Huntersville, North Carolina, and the effects of such decision upon unit employees; and

(B) Post copies of the Memorandum–Decision and Order herein at the facilities in Respondent's Syracuse, New York facility where notices to employees are customarily posted; said postings shall be maintained during the pendency of the Board's administrative proceedings free from all obstructions and defacements; all unit employees shall have free and unrestricted access to said notices, and agents of the Board shall be granted reasonable access to the Respondent's Syracuse, New York campus to monitor compliance with this posting requirement; and

(C) Within twenty (20) days of the issuance of the Memorandum–Decision and Order herein, file with the Court, with a copy submitted to the Regional Director of Region 3 of the Board, a sworn affidavit from a responsible official of respondent, setting forth with specificity the manner in which the Respondent has complied with the terms of this decree, including how it has posted the documents required by the Memorandum–Decision and Order herein.

IT IS SO ORDERED.

## MOTION FOR RECONSIDERATION, MODIFICATION AND A LIMITED STAY

Respondent moves for reconsideration and modification of this Court's order of February 5, 1999 and for a limited stay

pending appeal of the 10(j) injunction (29 U.S.C. 160[j] ).

Based on a "Charge Against Employer" filed by Sheet Metal Workers International Association, Local 527 ("union") on May 1, 1998, petitioner filed a complaint and notice of hearing on December 7, 1998, alleging that since March 1, 1998, respondent has insisted, as a condition of agreeing not to relocate certain unit work performed at its TR–1 facility in Syracuse, New York, that the union agree to the provisions of an addendum to the parties' collective-bargaining agreement; that the relocation of unit work is a mandatory subject for purposes of collective bargaining; that the addendum, which would effectively alter the scope of the existing bargaining unit, is not a mandatory subject for purposes of collective bargaining; and that on May 11, 1998, respondent bargained to impasse. The complaint avers that on the same date, respondent decided to relocate the work performed by certain unit employees in the TR–1 facility to a new facility located in Huntersville, North Carolina, notwithstanding that it had failed to reach a bona fide impasse in bargaining about the relocation decision. The complaint further states that beginning on or about October 11, 1998, respondent began to implement its decision to relocate the work to Huntersville. The complaint concludes that by the alleged conduct, respondent has failed and refused to bargain collectively with the exclusive collective-bargaining representative of its employees and seeks an order directing respondent to "cease and desist from relocating Unit work from its TR–1 facility located in Syracuse, New York, and to restore all Unit work which it has already removed, or will remove in the future, back to its TR–1 facility located in Syracuse, New York as it existed on May 11, 1998."

The petition essentially sets forth the same allegations as are contained in the complaint, states that petitioner has reasonable cause to believe that respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees, and seeks an order enjoining respondent from failing or refusing to bargain in good faith with the union regarding its decision to relocate. It further seeks an order enjoining respondent from taking any action including construction or preparation of the Huntersville facility or removing or relocating fixtures, equipment, inventory, raw materials, or work/production orders, or laying off or terminating any unit employees in Syracuse in furtherance of its decision to relocate work to Huntersville without first bargaining to a good-faith impasse or agreement with the union over the proposed relocation decision and its effects upon unit employees. The petition further requests that the Court issue an affirmative order directing respondent to bargain in good faith with the union concerning wages, hours and other terms and conditions of employment, including the decision to relocate, and the effects of such decision upon unit employees.

By Memorandum–Decision and Order dated February 5, 1999, this Court ordered that pending final disposition of the matters before petitioner, respondent was enjoined from failing or refusing to bargain in good faith with the union regarding its decision to relocate unit work to Huntersville, North Carolina and from taking any action including construction or preparation of the Huntersville facility or removing or relocating fixtures, equipment, inventory, raw materials or work/production orders or laying off or terminating unit employees in Syracuse without first bargaining to a good-faith impasse or agreement with the union over the proposed relocation decision and its effects on unit employees. The Court further ordered respondent, upon request, to bargain in good faith with the union concerning wages, hours and other terms and conditions of employment, including the decision to relocate unit work from its

Syracuse facility to the Huntersville facility.

### A. Modification of subparagraph (B) of the second ordering paragraph.

All parties agree to the proposed modification of subparagraph (B) of the second ordering paragraph to add the phrase "in furtherance of its decision to relocate work from its Syracuse, New York campus" so as to clarify the scope of the order. The Court grants this relief and modifies subparagraph (B) of the second ordering paragraph to read as follows:

(B) Taking any action, including construction or preparation of, or procurement or installation of equipment for, its facility in Huntersville, North Carolina, or removing or relocating any fixtures, machinery, equipment, inventory, raw materials, or work/production orders, or laying off or terminating any unit employees at its TR–1 facility on its Syracuse, New York campus in furtherance of its decision to relocate work from its Syracuse, New York campus to Huntersville, North Carolina, without first bargaining to a good-faith impasse or agreement with the union over the proposed relocation decision and its effects upon unit employees ***.

### B. Reconsideration and modification of that part of the Order that imposes on respondent an obligation to bargain with the union on request.

▌ Respondent requests the Court to reconsider and modify the final ordering paragraph on page 16 of the Court's February 5, 1999 order (subparagraph [A] of the third ordering paragraph), which directs respondent, upon request, to bargain in good faith with the union concerning the decision to relocate work from its TR–1 facility in Syracuse, New York to a facility in Huntersville, North Carolina, and the effects of such decision on unit employees. It is undisputed that respondent's proposed relocation is presently the only basis for a collective bargaining order. Respon-

dent argues that, inasmuch as respondent is enjoined from relocating, it is improper to compel it to bargain over the relocation issue.

There is nothing in the record to suggest that respondent does not intend to pursue its plans to relocate TR–1 as soon as possible. This court has found that petitioner has reasonable cause to conclude that relocation is an issue concerning which respondent is required to bargain collectively. Respondent claims it is losing millions of dollars due to the delay in commencing operation of its Huntersville plant. Unit workers and the union are prejudiced by the uncertainty regarding future employment and the potential weakening of the union as a result of the dispersion of workers. Directing collective bargaining concerning respondent's decision to relocate and the effects of that decision on unit employees while the *status quo* is maintained by the 10(j) injunction will serve the interests of respondent, the workers and the union and will promote the public interest in the resolution of labor disputes by collective bargaining. There is ample case law authority for such an order. See, e.g., *Frye for and on Behalf of N.L.R.B. v. Seminole Intermodal Transport, Inc.*, 141 L.R.R.M. 2265, 2267 (S.D.Oh.1992); *Zipp v. Bohn Heat Transfer Group.*, 110 L.R.R.M. 3013, 3015 (C.D.Il.1982); see, generally, *Dunbar v. Hill Park Health Care Center*, 23 F.Supp.2d 212 (N.D.N.Y.1998), *affd.* 166 F.3d 1200, 1998 WL 870195 (2d Cir.1998); *Bernstein v. Carter & Sons Freightways, Inc.*, 983 F.Supp. 994 (D.C.Kan.1997); *Ahearn v. House of the Good Samaritan*, 884 F.Supp. 654. (N.D.N.Y.1995).

Accordingly, the Court finds no basis to reconsider or modify its order insofar as it directs interim bargaining on the issue of relocation. For the same reasons, the Court declines to stay this portion of the order pending the outcome of the N.L.R.B. proceeding.

*C. Limited stay pending appeal of February 5, 1999 order.*

Respondent seeks a limited stay pending appeal of those portions of the Court's order that preclude respondent from completing the current construction and equipment contracts at the Huntersville facility and from transferring to Huntersville one crane that is currently not in use.

Respondent asserts that it will suffer irreparable harm as a result of the 10(j) injunction. The Court has already considered respondent's claims of financial hardship in reaching its decision to grant the injunction. The Court also considered all other relevant factors, including the support in the record for petitioner's finding that respondent engaged in an unfair labor practice, the fact that in its complaint petitioner seeks the remedy of restoration of the Syracuse plant, the potential harm to the union and unit workers if the injunction were denied, and the fact that respondent undertook the relocation with knowledge of the union's charges and the N.L.R.B. investigation. The Court previously observed that there was an absence of evidence of respondent's overall financial situation which would enable the Court to consider the burden of the claimed costs in the context of respondent's entire operation. The Court further observes on the present application that respondent's conclusory claims of potential contractual penalties and breach of contract claims against respondent arising from outstanding uncompleted contracts for work in Huntersville are unsubstantiated. Moreover, increased investment in the Huntersville plant will tend to militate against restoration as a final remedy by increasing the financial burden of restoration. Given the purpose of the 10(j) injunction herein, which is to maintain the *status quo,* preserve the availability of the restoration remedy sought by petitioner, and prevent respondent from accomplishing its objective of relocating the plant before being placed under legal restraint, the Court concludes, as it did previously, that,

weighed with all other relevant factors, the claimed financial harm does not warrant a stay of any part of the injunction, including that part of the injunction which effectively restrains relocation of the crane from TR–1 to Huntersville.

In considering the claimed harm to respondent, the Court also takes into consideration the fact that during a telephone conference occurring on February 10, 1999, the Court and parties addressed a number of issues involving the safety, security and preservation of the Huntersville plant during the pendency of the N.L.R.B. proceeding. As a result of that conference respondent was authorized to perform roof repairs, repair an opening in a wall, complete a safety check on the electrical system, secure plumbing fixtures and cover openings in the walls for windows and doors. The Court also stated that it would authorize respondent to install fire and burglar alarms if such alarms were required by local authorities. The Court further offered to assist the parties if they were unable to come to an agreement regarding respondent's request that it be permitted to take reasonable steps to protect a partially completed parking lot. Thus, practical problems arising from the injunction have been resolved.

Carrier also argues that it has a substantial likelihood of success on appeal. The issues raised by Carrier in support of this argument were considered by the Court in reaching its February 5, 1999 decision. No purpose would be served by revisiting them here.

Respondent has failed to carry its burden of proving its entitlement to a limited stay of the injunction.

Accordingly, it is hereby

ORDERED that respondent's motion is denied in its entirety.

IT IS SO ORDERED.